In re The **RAINBOW TRUST, BUSINESS TRUST**, Debtor.

The **RAINBOW TRUST, BUSINESS TRUST**, and the Unsecured Creditors Committee, Plaintiff,

v.

**MOULTON CONSTRUCTION, INC.**, Defendant.

Bankruptcy No. 94–10290,
Adv. No. 96–1002.

United States Bankruptcy Court,
D. Vermont.

Oct. 4, 1996.

J.T. Brighton, Sheehan, Phinney, Bass & Green, P.C., Manchester, New Hampshire, for Moulton Construction (Moulton).

J. Schwidde, Glinka & Schwidde, Rutland, Vermont and R.H. Sinzheimer, Albany, New York, for Debtor Rainbow Trust, Business Trust (Rainbow).

## MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.

Before us [1], on cross-motions for summary judgment, is the issue of whether Moulton is entitled to a holdback amount of $159,250 plus interest or whether Moulton must instead turn over funds previously distributed to it as a secured creditor. We hold that Moulton is entitled to the holdback amount, plus interest, as a matter of law. Presenting this matter of law in a perspicuous manner without a brief recitation of the undisputed material facts, however, would be unthinkable. Consequently, the facts follow.

## FACTS

Rainbow owned and operated an unlined landfill in Moretown, Vermont, known as the "Palisades Landfill." In late 1992, Rainbow's related corporation, "The Palisades Group," entered into a contract with Moulton for the construction of a lined landfill cell. The parties agreed that Moulton was to provide labor and materials to construct the cell for the sum of $1,098,869. Addendums to the original contract increased the price to $1,653,-325.55. Moulton completed the project in December, 1992, with a balance due of $1,326,804.65.

On December 31, 1992 Moulton filed a Notice of Memorandum of Lien for the balance due under 9 V.S.A. § 1921, et seq., in the Moretown Town Clerk's Office, attaching Rainbow's Palisades Landfill property. The Notice described the property as follows:

> All the same land and premises with improvement thereon in Moretown, Vermont conveyed to Rainbow Realty Trust by the Palisades, Inc. by Quitclaim Deed dated June 1, 1981 and recorded in Book 37, Page 24 of the Moretown land records, the premises being generally known as the "Palisades Landfill."

The lien misnames "Rainbow Trust" by referring to it as the "Rainbow Realty Trust."

After timely filing suit, on March 24, 1993, Moulton obtained an Order of Approval for a stipulated Writ of Attachment from the Washington Superior Court. The Order reads:

> "the Court finds that there is a reasonable likelihood that the Plaintiff will recover judgment and costs, in the amount equal to or greater than $700,000 ... Wherefore, it is ordered that attachment of nonexempt property of the Defendant in the amount of $700,000 is approved."

---

1. Our subject matter jurisdiction over this controversy arises under 28 USC § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 USC § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

The Writ then specifies that the attachment of the goods or estate of Rainbow is to be "held to satisfy **any** judgment for damage and costs that may be recovered by Moulton Construction, Inc...." [emphasis added]. The Writ, like the Notice and Order of Approval, refers to Rainbow as "Rainbow Realty Trust." The Writ also adds an additional property description which was absent in the Mechanic's lien and the Order of Approval. The Writ contains the above property description as it appears in the lien but also adds a second descriptive paragraph which reads as follows:

> And the same land and premises with improvements thereon in Moretown, Washington County, Vermont, conveyed to Robert C. Dowdell, Trustee of Rainbow Trust by Robert C. Dowdell, Jr., Trustee of Dowdell Trust by Warranty deed dated June 7, 1990 and recorded in Book 47, Page 373–374 of the Moretown land records.

One year later, Rainbow and Moulton, through their attorneys, entered into a Stipulation which provided that Rainbow would pay an initial $700,000 on or before April 5 and a second payment of $120,420 on or before May 20. In the event that Rainbow made the payments, the parties were to enter into a Stipulation of Settlement and Discontinuance with Prejudice and subsequently exchange general releases. The Stipulation further provided that should Rainbow fail to make timely payment, "Plaintiff without further notice to Defendants or their attorneys, may enter judgment against Defendants for the sum of $965,756 and costs, less only any sums paid pursuant to [the Stipulation] ..."

Rainbow failed to make the first payment, and on April 18, 1994, Moulton secured and filed a judgment pursuant to the Stipulation. The Judgment states:

> On the Stipulation of the parties dated March 29, 1994, the Defendants having failed to make the payment of $700,000.00 required by paragraph 1 of the Stipulation, It is ordered and adjudged that Plaintiff, Moulton Construction, Inc., recover of Defendants, Rainbow Realty Trust, a/k/a Rainbow Trust, Robert C. Dowdell, Jr., Trustee, and Robert C. Dowdell, Jr., indi-

vidually, damages in the amount of $965,-756.00 and Plaintiff's cost of action.

On May 10, 1994, Rainbow filed a Chapter 11 petition for bankruptcy with this Court. The Unsecured Creditors' Committee's First Amended Chapter 11 Plan, which treated Moulton as a secured creditor, was confirmed in November, 1995. This Court thereafter ordered a distribution to secured creditors, including a payment of approximately $820,-000 to Moulton. The balance of Moulton's claim was ordered held back "until Moulton demonstrates to the Court its entitlement to the holdback and interest."

In pursuit of the holdback, Moulton filed a Motion For Turnover of the Proceeds of its Collateral requesting the payment of the balance of the holdback and interest thereon. The Committee objected to Moulton's Motion. To resolve this conflict, the court ordered that the Committee initiate this adversary proceeding.

Both parties move for Summary Judgment. Rainbow and the Unsecured Creditors' Committee allege that as a matter of law, Moulton's secured claim is limited to the $700,000 of the Writ of Attachment. They seek an Order of Disgorgement and Turnover for the money paid to Moulton in excess of the $700,000 because Moulton obtained the $965,756.00 judgment within the preference period. Rainbow also requests that the underlying statutory lien be nullified because it misnamed Rainbow or alternatively that the mechanic's lien be voided to the extent that it attaches the second parcel of property.

Moulton argues that the ultimate judgment of $965,756.00 relates back in time and in right to the original mechanic's lien. It also alleges that the doctrine of *res judicata* precludes any turnover of funds it already received as a secured creditor pursuant to a confirmed, unappealed plan of reorganization. It thus seeks to recover the entire $159,250 holdback ordered by the Court.

We hold, for reasons slightly dissimilar to those of Moulton, that Moulton is entitled to summary judgment as a matter of law and that it shall receive the full holdback of $159,-250 plus interest.

## DISCUSSION

To prevail on a motion for summary judgment, the movant must satisfy the criteria set forth in F.R.Civ.P. 56 as made applicable by Bankruptcy Rule 7056. F.R.Civ.P. 56(c) provides in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Company, Inc. v. United States,* 841 F.2d 469 (2d Cir.1988); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir.1987); *Clark v. Union Mutual Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987). We agree with both parties before us, as conceded in their cross-motions for summary judgment, that there are no material facts in dispute. The issue of the Moulton's entitlement to the holdback is purely a matter of law.

Undoubtedly, we find both parties' arguments over the validity and longevity of the underlying mechanic's lien more tantalizing aliments for the mind than the pages to follow. However, we also find a revisit with *In re APC Construction,* 132 B.R. 690 (Bkrtcy D.Vt.1991) unnecessary in light of the facts before us. The existence of a confirmed plan of reorganization and a valid prejudgment Writ of Attachment obviates the need to discuss the extent of the mechanic's lien and any defects that it may have had.

■ We agree with Moulton that *res judicata* and its statutory equivalent forestall any obligation on Moulton's part to turn over funds it has already received under the confirmed plan. Section 1141(a) of the Bankruptcy Code states that, save specific exceptions, "... the provisions of a confirmed plan bind the debtor ... and any creditor." This is true even if a creditor has not accepted the plan and that creditor's lien was extinguished by virtue of its treatment under the plan, provided there was proper notice. *See In re Wrenn Insurance Agency of Missouri, Inc.,* 178 B.R. 792, 800 (Bkrtcy.W.D.Mo.1995). In addition to § 1141(a), "[i]t is now well-settled that a bankruptcy court's confirmation order is a binding final order, accorded full *res judicata* effect and precludes the raising of issues which could or should have been raised during the pendency of the case ..." *In re Heritage Hotel Partnership I,* 160 B.R. 374, 377 (9th Cir.BAP 1993). For example, debtors may not later initiate lender liability suits against creditors who were formally (and formerly) treated under the plan. *See Id.* at 379 and *Sure–Snap Corporation v. State Street Bank and Trust Company,* 948 F.2d 869, 877 (2nd Cir.1991) (holding that "in the context of lender liability claims that could have been brought before a final plan for reorganization was confirmed, but weren't, the prior bankruptcy order was res judicata to the later action").

■ Rainbow alleges that the confirmed plan's reservation of the right to object to claims regardless of whether they were previously allowed or disallowed saves them from the application of *res judicata* and § 1141(a). Object as it may, Moulton's status as a secured creditor has been fully and finally decided. We agree with Judge Gerling, who, when presented with a similar situation, noted:

> To permit Debtors to solicit acceptance of their Plan on that representation [to be paid in full], and then argue that because of ... a provision permitting Debtors to object to all claims within sixty days after confirmation that Rome's claim may now be bifurcated, is violative of basic principles of contract and bankruptcy law favoring fairness, certainty and finality.

*In re Henderberg,* 108 B.R. 407, 415–416 (Bkrtcy.N.D.N.Y.1989). Moulton more than likely accepted the plan and chose not to appeal the confirmation order because of its treatment as a secured creditor, at least to the amount of $820,000. There were no pro-

visions in the plan for alternate potential treatment and no additional rights were reserved pertaining to Moulton's claim. *See In re Wrenn Insurance, supra,* 178 B.R. at 794, 796 (there can be no later attempt to elevate the status of claims when no special rights are reserved and no alternate treatment is provided for in plan). In light of the foregoing, we first hold that Moulton is unquestionably entitled to the $820,000 which was distributed to it as a secured creditor in the confirmed plan of reorganization.

■ The final question before us is whether Moulton is entitled, as a matter of law, to the holdback amount of $159,250. We believe that Moulton is so entitled, without regard to its original mechanics lien. The judgment lien obtained by Moulton related back to the date of the Writ of Attachment, and that attachment secured the entire amount of the judgment.

Section 2902 of Title 12 of the Vermont Statutes adopts the position, held by many jurisdictions, that judgment liens relate back to the date of the prejudgment attachment. It states in part: "Any judgment lien filed on real property which has been attached in the suit in which the judgment is rendered shall relate back to the date of attachment if the judgment is recorded within 60 days after it becomes final." Bankruptcy courts similarly hold that an attachment of property made outside of the preference period rescues the later judgment from being deemed a preference. *See, e.g., In re Coston,* 65 B.R. 224, 226–27 (Bkrtcy.D.N.M.1986); *In re Giordano,* 188 B.R. 84, 87 (Bkrtcy.D.R.I.1995) and *See In re Cooper,* 153 B.R. 925, 926 (Bkrtcy. M.D.Fl.1993) (prejudgment garnishments). In this case, Moulton fits squarely within § 2902 because the judgment lien was recorded in the Moretown town records (where the Writ was previously recorded) one day after the final judgment was entered.

■ Finally we must address Rainbow's argument, made in the context of mechanic's liens rather than prejudgment attachments, that just as the judgment lien relates back to the **date** of the attachment, so it shall relate back to the **amount** of the attachment. We disagree. Vermont procedure, practice and case law from other jurisdictions compel our conclusion.

Vermont Rule of Civil Procedure 4.1, a fairly recent addition to Vermont's procedural rules, is designed to ensure sufficient due process when attaching property. Subsection (a), entitled "Availability of Attachment," explains that any real estate or personal property may "be attached and held to satisfy **any** judgment for damages and costs which the plaintiff may recover." [emphasis ours]. The language clearly indicates that the property can be held to the full extent that it is able to satisfy or settle the entire judgment recovered. The final judgment establishes the amount of debt which is secured by the judicial lien created upon the prejudgment attachment. *See, e.g., In re: Moscoso,* 111 B.R. 13, 18 (Bkrtcy.D.P.R.1989) (debtor permitted to proceed to judgment in state court to establish amount of debt secured by prejudgment attachment; judgment would by limited to value of property).

Rainbow argues, however, that due process requirements, as codified in VRCP 4.1(b) and (c), preclude any attachment beyond the amount of the original writ. Subsection (b), entitled "Writ of Attachment: Issuance," protects debtors by requiring that the judge, either after a hearing or in truly exigent circumstances, ex parte, must find that the plaintiff is reasonably likely to recover an amount "equal to or greater" than that requested. Rainbow believes that any attachment, then, sets the maximum amount recoverable from the property.

We hold, however, that the purpose of the subsection is to require the plaintiff to prove the existence of a potential claim of value and to establish the plaintiff's ability to obtain a writ, especially when there is limited notice. The subsection in no way pertains to the subsequent validity of the writ obtained. Contrary to Rainbow's contentions we find no language of limitation on the security for the ultimate judgment in subsection (b). Any such construction would nullify the language in subsection (a) which states that the attachment obtained secures **"any"** judgment. Finally, we note that often, in practice, when releases of attachments are negotiated, the releasing party will ensure that an

amount somewhat greater than the attachment is put aside to cover any subsequent judgment.

As another practical note, we recognize that the primary function of the writ of attachment is to establish priorities, which are especially relevant in the bankruptcy context, and to provide notice to those dealing with the property in question. The relation back statute, § 2902, discussed previously, recognizes the importance of obtaining a writ and the purpose it serves. It ensures that the original attachment notifies all potential creditors that there is someone in line before them with regard to the property described. The notice attaches to the property being held; the exact amount claimed and even the identity of the defendant are purely secondary. The attaching creditor has established priority of recovery in the attached property.

## CONCLUSION

Moulton's prejudgment attachment, made outside of the preference period, secured its ultimate judgment, in time and amount. Moulton shall receive the $159,250.00 holdback, plus interest. Counsel for Moulton is to submit an order within five days.