In re The **RAINBOW TRUST, BUSINESS TRUST,** Debtor.

The **RAINBOW TRUST, BUSINESS TRUST,** and the Unsecured Creditors Committee, Plaintiff,

v.

**MOULTON CONSTRUCTION, INC.,** Defendant.

Bankruptcy No. 94–10290.
Adv. No. 96–1002.

United States Bankruptcy Court,
D. Vermont.

March 17, 1997.

---

J.T. Brighton, Sheehan, Phinney, Bass & Green, P.C., Manchester, NH, for Moulton Construction (Moulton).

J. Schwidde, Glinka & Schwidde, Rutland, VT and R.H. Sinzheimer, Albany, NY, for Debtor Rainbow Trust, Business Trust (Rainbow).

## MEMORANDUM DECISION ON MOTION TO RECONSIDER GRANTING OF SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.

Before us[1] is a motion to reconsider our order granting summary judgment to Moulton and awarding it a holdback amount of $159,250 plus interest. Rainbow argues that the court has made an error of law which, if corrected, would require Moulton to turn over funds previously distributed to it as a secured creditor, rather than entitle it to the holdback. We concede that we made an error of law but hold nonetheless that Moulton is entitled to the holdback amount, plus interest, as a matter of law.

### FACTS

We provide only those facts necessary for an understanding of our decision today, referring those unfamiliar with the facts to our memorandum of decision granting summary judgment in *In re Rainbow Trust, Business Trust*, 200 B.R. 785 (Bkrtcy.D.Vt.1996). In late 1992, Rainbow's related corporation, "The Palisades Group," entered into a contract with Moulton for the construction of a lined landfill cell. The parties agreed that Moulton was to provide labor and materials to construct the cell for the sum of $1,098,869. Moulton completed the project in December, 1992, with a balance due of $1,326,804.65.

On December 31, 1992 Moulton filed a Notice of Memorandum of Lien for the balance due under 9 V.S.A. § 1921, *et seq.*, in the Moretown Town Clerk's Office, attaching Rainbow's Palisades Landfill property. The Notice described one of two parcels owned by Rainbow. The lien misnames "Rainbow Trust" by referring to it as the "Rainbow Realty Trust."

After timely filing suit, on March 24, 1993, Moulton obtained an Order of Approval for a Writ of Attachment from the Washington Superior Court. The stipulated Order reads:

"the Court finds that there is a reasonable likelihood that the Plaintiff will recover judgment and costs, in the amount equal to or greater than $700,000 ... Wherefore, it is ordered that attachment of nonexempt property of the Defendant in the amount of $700,000 is approved."

The stipulated Writ then specifies that the attachment of the goods or estate of Rainbow is to be "held to satisfy any judgment for damage and costs that may be recovered by Moulton Construction, Inc...." The Writ, like the Notice and Order of Approval, refers to Rainbow as "Rainbow Realty Trust." The Writ also adds an additional property description which was absent in the Contractor's lien and the Order of Approval.

One year later, Rainbow and Moulton entered into a stipulation in the action entitled "Moulton Construction, Inc. v. Rainbow Realty Trust, a/k/a Rainbow Trust ..." which provided that Rainbow would pay an initial $700,000 on or before April 5 and a second payment of $120,420 on or before May 20. In the event that Rainbow made the first payment, Moulton was to "deliver to a neutral entity, in escrow, a release of its $700,000 attachment." When both payments were made, the parties were to enter into a Stipulation of Settlement and Discontinuance with Prejudice and exchange general releases. The stipulation further provided that should

---

1. Our subject matter jurisdiction over this controversy arises under 28 USC § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 USC § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

Rainbow fail to make timely payment, "Plaintiff without further notice to Defendants or their attorneys, may enter judgment against Defendants for the sum of $965,756 and costs, less only any sums paid pursuant to [the stipulation]. . . ."

Rainbow failed to make the first payment, and on April 18, 1994, Moulton obtained a judgment pursuant to the stipulation. The Judgment states:

> On the Stipulation of the parties dated March 29, 1994, the Defendants having failed to make the payment of $700,000.00 required by paragraph 1 of the Stipulation, It is ordered and adjudged that Plaintiff, Moulton Construction, Inc., recover of Defendants, Rainbow Realty Trust, a/k/a Rainbow Trust, Robert C. Dowdell, Jr., Trustee, and Robert C. Dowdell, Jr., individually, damages in the amount of $965,756.00 and Plaintiff's cost of action.

The Judgment also makes reference to the "Proposal and Abbreviated Form of Agreement" between Palisades and Moulton for the sum of $1,098,869.00.

On May 10, 1994, Rainbow filed a Chapter 11 petition for bankruptcy with this Court. The Unsecured Creditors' Committee's First Amended Chapter 11 Plan, which treated Moulton as a secured creditor, was confirmed in November, 1995. This Court thereafter ordered a distribution to secured creditors, including a payment of approximately $820,000 to Moulton. The balance of Moulton's claim was ordered held back "until Moulton demonstrates to the Court its entitlement to the holdback and interest."

In pursuit of the holdback, Moulton filed a Motion For Turnover of the Proceeds of its Collateral requesting the payment of the balance of the holdback and interest thereon. The Committee objected to Moulton's Motion, arguing that Moulton should instead turn over funds already distributed to it because they represented a preference. To resolve this conflict, the court ordered that the Committee initiate this adversary proceeding.

Both parties moved for Summary Judgment and we granted Moulton's motion because we found that Moulton's judgment re-lated back to the date of the attachment in time and amount and thus was not a preference. We grant the motion to reconsider but again hold that Moulton is entitled to summary judgment as a matter of law.

## DISCUSSION

Rainbow asks us, either under F.R.C.P. 59(e) or 60(b), as made applicable to bankruptcy cases by F.R.B.P. rules 9023 and 9024, to reconsider our order granting summary judgment to Moulton. It requests an amendment of our judgment because a mistake of law was made under F.R.C.P. 60(b)(1). Neither party argues that this case is not ripe for summary judgment or that a mistake of fact was made. Therefore, we will not recite our discussion regarding the standards for granting summary judgment.

We also note that we find no mistake in our holding that *res judicata* and its statutory equivalent forestall any obligation on Moulton's part to turn over funds it has already received under the confirmed plan. For the reasons cited in *Rainbow, supra* 200 B.R. 785 at 788–89, Moulton is unquestionably entitled to the $820,000 which was distributed to it as a secured creditor in the confirmed plan of reorganization. The remaining issue, once again, is Moulton's entitlement to the holdback amount of $159,250.

▆▆▆ Acknowledging that a mistake of law was made, we agree that we mistakenly relied on Vermont statute 12 V.S.A. § 2902 for our holding, which does not apply to the situation at hand. Section 2902 of Title 12 of the Vermont Statutes states in part: "Any judgment lien filed on real property which has been attached in the suit in which the judgment is rendered shall relate back to the date of attachment if the judgment is recorded within 60 days after it becomes final." Using this section, we found that Moulton's judgment lien related back to the date of its attachment because it was recorded the day after the judgment on the stipulation was signed. Rainbow points out that under Vermont law, judgments do not become final until the appeal period has expired, normally 30 days. *See* V.R.C.P. 62(a)(1) and 12 VSA § 2904. To properly record a judgment, a judgment creditor must also file a notation of

when the judgment became final. 12 VSA § 2904. We find, then, that Moulton did not properly follow the procedure for recording judgment liens under 12 VSA § 2901 *et seq.* because it did not wait the requisite 30 days. Finding that Moulton correctly followed 12 VSA § 2901 *et seq.* was our error.

We do hold, on the other hand, that Moulton correctly followed the procedure for obtaining and maintaining a contractor's lien. Moulton first properly recorded its contractor's lien under 9 VSA § 1923 for the amount owing on the contract. It then filed an action and obtained an attachment within three months of the filing of the memorandum, keeping with 9 VSA § 1924. Within that action, it obtained a judgment that contained a statement of the contract upon which the judgment was based under 9 VSA § 1924. Finally, it recorded that judgment within five months of its issuance, following 9 VSA § 1925. We note here that section 1925 does not require a notation of when the judgment became final or even that the judgment be final. 9 VSA § 1925. The section reflects the legislative policy of assisting contractors who improve real property in obtaining payment for services rendered.

Rainbow raises several points that either allege mistakes on Moulton's part or question the capacity of Moulton's judgment to withstand the rigors of bankruptcy. We will address each argument in turn.

Rainbow first asserts that the contractor's lien is void in its entirety because it names "Rainbow Realty Trust, Robert C. Dowdell trustee" as the Palisades landfill owner, rather than "Rainbow Trust, Robert C. Dowdell, trustee." We find no merit in this argument. As 9 VSA § 1921 states, the person proceeding in pursuit of a contract for improving real property "shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same." 9 VSA § 1921(a). The property is the focus of the statute. More importantly, in this case, the stipulation obtained in the judgment upon the lien was signed by an attorney for "Rainbow Trust, a/k/a Rainbow Realty Trust. . . ." Our only evidence, then, shows that both of the above names indicate the same entity. Finally, we

note that because Robert C. Dowdell's name appears in all documents as trustee of either or both trusts, and because the Writ of Attachment was initialed by attorneys who were unchanged throughout the state action, the misnaming created no apparent noticing problems.

Rainbow next contends that because Moulton named only one parcel of property in the recorded memorandum of lien, the lien, if it exists at all, attaches only to that property. We once again find that Rainbow's argument lacks merit. Section 1924, entitled "Action to Enforce Lien," states in part: "Within three months from the time of filing such memorandum . . . such person may commence his action for the same and cause such real estate *or any other property* to be attached thereon. . . ." [emphasis added]. The stipulated Writ of Attachment properly names the two parcels, both to be "held to satisfy any judgment for damages and costs." *See* Writ of Attachment. Section 1925 provides that a plaintiff may file a certified copy of the judgment with the town "in which such real estate *or other property* is situated. Thereupon *the same* shall be holden for the amount due upon such judgment. . . ." [emphasis added]. 9 VSA § 1925. As the foregoing describes, Moulton perfected its interest in the second parcel of property by indicating the description in the Writ of Attachment.

The next assertion made by Rainbow is that even if the original contractor's lien were valid, only the portion of the judgment relating to the contractor's lien relates back to the commencement of work; it finds this amount to be only $700,000. It argues that because the stipulation called for release of the attachment upon the first payment of $700,000 and because the complaint named three causes of action, any amount stipulated to beyond the $700,000 did not relate to the contractor's lien. We find this argument to be a stretch. First, Moulton's three causes of action were (1) to enforce the lien, (2) for breach of contract and (3) in quantum meruit, all for the amount due under the contract. They were all merely alternate theories to ensure recovery for the full amount owed.

Second, we note that stipulations often involve releases of attachment upon some payment made. *See e.g. Charles A. Gaetano Construction Corp. v. Citizens Developers of Oneonta, Inc.*, 175 A.D.2d 465, 572 N.Y.S.2d 515 (N.Y.App.Div.1991). This stipulation to a release in no way fixes the amount of the attachment, especially when the stipulation was not followed. From the Writ of Attachment forward, the parties made many attempts to stipulate to an amount acceptable by both parties, but what matters to us are only the promises that were kept and the ultimate judgment that was received. Finally, we have no evidence that the Judgment related to anything but the contract for the landfill cell. The Judgment made reference to the construction contract, which was in fact for a *greater* dollar amount than the total judgment.

 Rainbow's final argument relies on the doctrine of merger. According to Rainbow, Moulton's ultimate Judgment, because it was stipulated, erased the underlying statutory lien and created either a contractual or judicial obligation. A stipulation creates a new, superseding liability which is substituted for the original one. *See* Defendant's Supplemental Brief in Support of Defendant's Motion for Summary Judgment and Objection to Plaintiff's Application for Summary Judgment, page 4, *citing Yonkers Fur Dressing Co. v. Royal Insurance Co.*, 247 N.Y. 435, 160 N.E. 778 (N.Y.Ct.App. 1928). Curiously, Rainbow argues that the principles of *Gaetano, supra,* apply in our case to yield an opposite conclusion to that of the New York court, which held that a defendant could not have his bond extinguished upon judgment, because he had stipulated with plaintiff to terminate the foreclosure action against him upon the making of a first payment, which was never made. Rainbow argues that in this case, the parties never stipulated to the survival of the lien foreclosure action if payments were not made, so the doctrine of merger applies here. This is a tenuous distinction, considering that the parties stipulated to a release of the action if payments were made and judgment in the action if payments were not made. Our situation is instead much like that in *Gaetano.*

We believe that applying the doctrine of merger to actions to enforce statutory liens would effectually eradicate the existence of a contractor's lien in Vermont. As noted, section 1924 of Title 9 *requires* a person claiming a contractor's lien to file suit and obtain an attachment within three months of filing the memorandum of lien. *Filter Equipment Co. v. International Business Machines Corp.*, 142 Vt. 499, 458 A.2d 1091 (1983). The involvement of the judiciary does not change the nature of the statutory lien. *See In re APC Construction Inc.*, 112 B.R. 89, 124–25 (Bkrtcy.D.Vt.1990), *aff'd* 132 B.R. 690 (D.Vt.1991). If a judgment obtained in the action to enforce the lien, stipulated or otherwise, eradicated the underlying lien, the lien would not be worth the paper it was written on. It would dissolve whether or not the statute were followed, thereby disintegrating the possibility of enforcement.

Section 1924 is not merely coincidentally entitled "Action to Enforce Lien." The "lien" being enforced is one under § 1921 which, as stated in § 1923, charges the real estate "as of the visible commencement of work." 9 VSA § 1923. The judgment obtained in "the action" need only contain a brief statement of the contract on which it is founded to comply with the statute. 9 VSA § 1924. Finally, if the above judgment is recorded within five months in the town where the real estate or other property is situated, the real estate "shall be holden for the amount due upon such judgment ... *as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work ...*" [emphasis added]. 9 VSA § 1925. The fact that § 1925, entitled "Foreclosure," does not indicate what types of judgments "count" is irrelevant. We would do a grave injustice to all courts of law, creating unprecedented backlogs, by holding that a stipulated judgment does not hold the same force and effect as a nonconsensual judgement.

## CONCLUSION

 Having found that Moulton's judgment is secured by its contractor's lien, a statutory lien, the fact that the judgment was obtained within the preference period is ir-

relevant. Contractor's liens are not avoidable as a preference. 11 USC § 547(c)(6). Accordingly, Rainbow cannot prevail on its motion for turnover. Moulton is instead entitled to the full holdback amount of $159,250.00 plus interest because it obtained, perfected and received judgment upon a valid statutory lien pre-petition.

Counsel for Moulton is to submit an order within five days.