216 B.R. 77 (1997)
In re The RAINBOW TRUST, Business Trust, Debtor.
The OFFICIAL UNSECURED CREDITORS' COMMITTEE OF THE RAINBOW TRUST, Business Trust, Appellant,
v.
MOULTON CONSTRUCTION, INC., Appellee.
BAP Nos. 97-50018, 97-50019, Bankruptcy No. 94-10290.
United States Bankruptcy Appellate Panel of the Second Circuit.
December 12, 1997.
*78 Ronald H. Sinzheimer, Jeffrey D. Dillabough, Ronald H. Sinzheimer, P.C., Albany, NY, for Official Unsecured Creditors' Committee.
Joel T. Brighton, Sheehan, Phinney, Bass & Green, P.C., Manchester, NH, for Moulton Construction, Inc.
Before: SHIFF, BROZMAN, NINFO, Bankruptcy Appellate Panel Judges.

OPINION
SHIFF, Chief Judge.
The appellant Official Unsecured Creditors' Committee ("Committee") appeals from the March 17, 1997 decision of the Bankruptcy Court for the District of Vermont (Conrad, C.J.), see 207 B.R. 70 (Bankr.D.Vt.1997) ("Rainbow Trust II"), in which the court determined that appellee Moulton Construction, Inc. ("Moulton") held a perfected contractor's lien[1] for which it was entitled to receive the entire amount of its claim, including the held back amount of $159,250.00. Appellee Moulton has filed a cross appeal, contending that the court erred in determining on reconsideration of its prior ruling, see 200 B.R. 785 (Bankr.D.Vt.1996) ("Rainbow Trust I"), that Moulton did not properly follow the Vermont procedure to record its judgment lien as it related to its prejudgement *79 attachment. For the reasons that follow, we affirm.

I.

BACKGROUND
The relevant facts are not in dispute. The debtor Rainbow Trust, Business Trust ("Rainbow Trust") is a Vermont trust that owns and operates the Palisades Landfill, an unlined landfill in Moretown, Vermont. Its related corporation, Palisades Group, entered into an agreement with Moulton in August 1992 to provide services for the construction of a lined landfill cell. The agreement provided that Moulton would be paid $1,098,869.00, which was increased by contract addenda to $1,653,325.55. When the cell was completed in or about December 1992, Moulton was owed $1,326,804.65.
On December 31, 1992, Moulton filed a Notice of Memorandum of Lien for $1,326,804.65 plus interest in the Moretown town clerk's office against "Rainbow Realty Trust" in order to obtain a contractor's lien on the Palisades Landfill ("Notice"). See Vermont's contractor's lien statute, 9 V.S.A. § 1921, et seq. On March 11, 1993, Moulton commenced an action in the Superior Court of Vermont against Rainbow Trust for foreclosure of lien, breach of contract, and quantum meruit. On that date, Moulton also filed a Motion for Hearing and Writ of Attachment, seeking to attach the Palisades Landfill and a second parcel not identified in the Notice. On March 24, Moulton obtained an Order of Approval for a "Writ of Attachment" in the amount of $700,000.00 against property of Rainbow Realty Trust. See Rule 4.1 V.R.Civ.P. The parties had stipulated to the amount of the attachment. On March 26, the Order of Approval and the Writ of Attachment were filed in the Moretown town clerk's office against Rainbow Realty Trust "to the value of $700,000.00." The Writ of Attachment included a description of the Palisades Landfill and the second parcel that was absent from the Notice.
On March 29, 1994, Moulton and Rainbow Trust agreed that if Rainbow Trust paid $700,000.00 to Moulton on or before April 5 and an additional sum of $120,420.00 on or before May 20, Moulton would release the $700,000.00 attachment upon its receipt of the $700,000.00 payment ("Stipulation"). The Stipulation further provided that if those payments were made, Moulton would seek the dismissal of its action with prejudice and general releases would be exchanged. See April 17, 1996 Application for Summary Judgment, Exh. E. If, however, Rainbow Trust failed to make either of the payments, the Stipulation authorized Moulton to seek, without further notice, the entry of a judgment against Rainbow Trust for "$965,756.00 and costs, less only any sums paid pursuant to [the Stipulation]. . . ." Id. Rainbow Trust failed to make the April 5 payment. On April 18, Moulton obtained judgment pursuant to the Stipulation ("Judgment"). A certified copy of the Judgment was filed in the town clerk's office on April 19. No appeal was filed from the entry of the Judgment.
On May 10, Rainbow Trust filed a chapter 11 petition in the District of Vermont. On January 18, 1995, the court ordered a sale of Rainbow Trust's principal assets. On July 25, an Order on Distribution of Sale Proceeds to Secured Creditors entered which, inter alia, ordered the payment of $820,000.00 plus interest to Moulton and held back $159,250.00 from Moulton's total claim, "until Moulton demonstrates to the Court its entitlement to the holdback and interest" ("Distribution Order"). See Distribution Order, n. 5. See also Rainbow Trust I, supra, 200 B.R. at 787 (internal quotation marks omitted). Pursuant to the Distribution Order, on or about August 1, 1995, Rainbow Trust paid $880,443.25 to Moulton.
On November 30, 1995, the Committee's First Amended Plan was confirmed. The plan provided for a distribution of $880,443.25 to Moulton on its secured unimpaired claim, and held back $159,250.00, in accordance with the Distribution Order. See Committee's First Amended Plan of Reorganization, ¶¶ 4.2, 5.1. On December 22, 1995, the court granted the Committee's Ex Parte Application for Authority to Deposit Monies and authorized the balance of the sale proceeds to be transferred from Rainbow Trust *80 to the Committee and deposited in a money market mutual fund.
Moulton thereafter filed a Motion for Turnover of the Proceeds of its Collateral, seeking to recover the amount held back under the Distribution Order. The Committee objected on December 29, 1995. On January 16, 1996, Rainbow Trust and the Committee commenced the instant adversary proceeding asserting, inter alia, that Moulton's Judgment was obtained within the preference period and that any recovery by Moulton was limited to $700,000.00 under the Order of Approval and the Writ of Attachment.
On April 17, 1996, Rainbow Trust and the Committee filed a joint motion for summary judgment seeking, inter alia, a turnover under § 542. The thrust of their motion was that Moulton was entitled to $700,000.00, the amount stated in the Writ of Attachment, and anything in excess of that amount in the Judgment was a voidable preference. See Joint Application for Summary Judgment at 4-8. On May 30, 1996, Moulton filed a cross motion for summary judgment requesting the balance of its claim and asserting, inter alia, that under 9 V.S.A. § 1925, the Judgment related back in time to its contractor's lien, see Moulton's Brief in Support at 7. Moulton's motion contended that any attempt by Rainbow Trust and the Committee to recover monies already paid pursuant to the confirmed plan was barred by, inter alia, the doctrine of res judicata. Id. at 13-16.
On October 4, 1996, the bankruptcy court granted Moulton's cross motion and entered summary judgment in its favor, finding no genuine dispute as to any material fact. See Rainbow Trust I, supra, 200 B.R. 785. The court concluded that Moulton was entitled to the $820,000.00 it had previously received under the Distribution Order because the confirmed plan bound the parties, see § 1141(a), and the doctrine of res judicata precluded the relitigation of the claim notwithstanding the assertion that the Committee had reserved that right under the plan. Id. at 788. Relying on 12 V.S.A. § 2902, the court also held that Moulton was entitled to recover $159,250.00, the amount held back under its Distribution Order. The court reasoned that the state court judgment lien was recorded within the 60 day statutory period and therefore related back to March 26, 1993, the date of the recording of the Writ of Attachment. The effect was to take the transfer out of the preference period.
On October 16, 1996, the Committee moved for reconsideration. On March 17, 1997, the court again granted Moulton's cross motion for summary judgment. See Rainbow Trust II, supra, 207 B.R. 70. As to the $820,000.00 payment, the court determined that Moulton was entitled to keep that amount "which was distributed to it as a secured creditor in a confirmed plan of reorganization." Id. at 73. As to the $159,250.00, the court acknowledged that it had erred in its reliance on 12 V.S.A. § 2902. Nonetheless, the court stated that Moulton had "correctly followed the procedure for obtaining and maintaining a contractor's lien." Id. at 74. The court concluded, "[h]aving found that Moulton's judgment is secured by its contractor's lien, a statutory lien, the fact that the judgment was obtained within the preference period is irrelevant. Contractor's liens are not avoidable as a preference. 11 U.S.C. § 547(c)(6)." Id. at 75-76. On March 28, 1997, the court entered an order which provided for payment to Moulton of $159,250.00 plus interest at a rate of 5.35% through March 24, 1997 of $24,829.83, plus interest from March 25, 1997 to the date of payment at a per diem rate of $23.67.
On April 4, 1997, the Committee filed a notice of appeal from the March 27, 1997 order.[2] On April 16, 1997, Moulton filed a *81 cross appeal contending that the bankruptcy court erred in concluding that it failed to properly record the Judgment as it related to the prejudgment attachment, and stated its intent to pursue that cross appeal "if and only if this Panel reverses the Bankruptcy Court's Decision granting Moulton's motion for summary judgment based on its mechanics' lien." Moulton's Cross Appeal at 15.
The following issues are raised on appeal: (i) whether the Due Process Clause of the Fourteenth Amendment limits the relation back of the Judgment to the amount of the attachment; (ii) whether the act of recording the Judgment is an act of enforcement under Rule 62 V.R.Civ.P.; (iii) whether the Judgment is avoidable as a preferential transfer under § 547(b); and (iv) whether the appropriate rate of interest on the hold back amount is the amount set out in the Distribution Order and confirmed plan or the amount applied to funds under a money market account.

II.

DISCUSSION

Standard of Review
Legal conclusions of the bankruptcy court are reviewed de novo and findings of facts are subject to a clearly erroneous standard. Scherling v. Huerta (In re FYM Clinical Laboratory, Inc.), No. 95-4656, 1997 WL 666238, at *3 (S.D.N.Y. Oct. 27, 1997). See also Kabro Associates v. Colony Hill Associates (In re Colony Hill Associates), 111 F.3d 269, 273 (2d Cir.1997); Rule 8013 F.R.Bankr.P. A grant of summary judgment is reviewed under a de novo standard of review. See White v. White Rose Food, 128 F.3d 110, 113 (2d Cir.1997); Aquatic Development Group, Inc. v. Thomas (In re Aquatic Development Group, Inc.), No. 97-50023, 1997 WL 642984, at *4 (2d Cir. BAP Oct. 10, 1997); Scherling v. Huerta, supra at *3.
The bankruptcy court stated: "Neither party argues that this case is not ripe for summary judgment or that a mistake of fact was made." Rainbow Trust II, supra, 207 B.R. at 73. The parties do not refute that statement on appeal.[3]

Applicable Law
In Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), the United States Supreme Court stated:
Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.
We therefore resolve the issues on appeal by reference to Vermont law.[4]
The relevant provisions of the Vermont Contractor's Lien Statute provide in part:
§ 1921. Extent of lien; notice
(a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same.
. . .
(c) A lien herein provided for shall not continue in force for more than one hundred and twenty days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided.

*82 ...
9 V.S.A. § 1921(a), (c) (1997).
§ 1923. Recording notice of lien
A person claiming a lien under section 1921 of this title shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of material. . . .
9 V.S.A. § 1923 (1997).
§ 1924. Action to enforce lien
Within three months from the time of filing such memorandum, if such payment is due at the time of such filing . . ., such person may commence his action for the same, and cause such real estate or other property to be attached thereon. If he obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded.
9 V.S.A. § 1924 (1997).
§ 1925. Foreclosure
Within five months after the date of such judgment, the plaintiff may cause a certified copy of the record thereof to be recorded in the office of the clerk of the town in which such real estate . . . is situated. Thereupon the same shall be holden for the amount due upon such judgment . . . as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials, subject, however, to the priorities in section 1921 of this title, and the plaintiff may obtain possession and foreclose the defendant's equity of redemption as in case of a mortgage.
9 V.S.A. § 1925 (1997).
Title 12 of the Vermont Statutes provides:
§ 3295. Attachment of real estate and personal property.
A writ of attachment of real estate or personal property shall be filled out as provided by rule adopted by the supreme court and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a superior or district judge approving attachment in the same manner as is provided by the Vermont Rules of Civil Procedure for attachment of personal property that is to be removed or taken into possession.
12 V.S.A. § 3295 (1997).
Rule 4.1 V.R.Civ.P. sets out the attachment procedure and provides:
(a) Availability of Attachment. In any action under these rules (except an action for malicious prosecution, libel, or slander), real estate . . . may, in the manner and to the extent provided by law and by this rule, be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover.
(b) Writ of Attachment: Issuance.
(1) A writ of attachment shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a Superior or District Judge approving attachment for a specified amount as provided in paragraph (2) or (3) of this subdivision. The order shall specifically state the grounds of its issuance and shall be incorporated in and made part of the writ.
(2) Except as provided in paragraphs (3) and (4) of this subdivision, an order of approval may be issued only upon motion after five days' notice to the defendant . . . and upon hearing and a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant *83 to be available to satisfy the judgment. . . .
Rule 4.1 V.R.Civ.P. (1997).
Under Vermont's contractor's lien statute, 9 V.S.A. § 1921 et seq., a contract that is made to improve real property, furnish labor, or provide materials creates a contractor's lien upon the property. 9 V.S.A. § 1921(a). A contractor is required to record a notice of memorandum of lien in the town clerk's office which "shall charge such real estate with such lien as of the visible commencement of work or delivery of material. . . ." See 9 V.S.A §§ 1921(c), 1923. Within three months of filing the notice, the contractor is then required to commence an action to enforce the contractor's lien. 9 V.S.A. § 1924. Within that three month period, the lienholder must also secure an attachment on the real property that is the subject of the lien under Rule 4.1 V.R.Civ.P., in order to perfect the contractor's lien. Id. See also In re APC Construction, Inc., supra, 132 B.R. 690, 694 (citations and internal quotations omitted) ("Obtaining a judicial order for a writ of attachment within the three month period prescribed under § 1924 perfects the lien and is a requisite to preserving the statutory lien. . . . The failure to perfect a recorded notice of lien by obtaining a writ of attachment means the lien is lost"). "[T]he property involved must be actually attached within the three-month period, and . . . it is not enough that the suit be merely commenced." Filter Equipment Co., Inc. v. International Business Machines Corp., 142 Vt. 499, 502, 458 A.2d 1091 (1983) (citations omitted). Any judgment obtained must contain a brief statement relating to the contract. 9 V.S.A. § 1924. Within five months of the date of the judgment, the plaintiff must record a certified copy of the judgment with the town clerk's office. See 9 V.S.A. § 1925. The effect of that recordation is to encumber the real estate ". . . for the amount due upon such judgment . . . from the time of the visible commencement of work or delivery of materials. . . ." See 9 V.S.A. § 1925. Furthermore, "the resulting judgment, when obtained, has the force of a mortgage, and a right of foreclosure for nonpayment." Filter Equipment Co., Inc. v. International Business Machiness Corporation, supra, 142 Vt. at 502, 458 A.2d 1091.
The bankruptcy court determined that "Moulton correctly followed the procedure for obtaining and maintaining a contractor's lien." See Rainbow Trust II, supra, 207 B.R. at 74. On December 31, 1992, Moulton recorded its Notice. On March 11, 1993, it commenced its action and moved for the issuance of the Order of Approval. Thereafter, the motion was heard, at which hearing, counsel for Rainbow Trust was present and stipulated to the amount of the Writ of Attachment. The Writ of Attachment was recorded on March 26, 1993. Moulton therefore timely perfected its lien pursuant to the statute.[5]

Due Process Allegation
$820,000.00
The bankruptcy court determined that "res judicata and its statutory equivalent [§ 1141(a)(1)] forestall any obligation on Moulton's part to turn over funds it has already received under the confirmed plan. . . ." Rainbow Trust II, supra, 207 B.R. at 73. Therefore, "Moulton is unquestionably entitled to the $820,000.00 which was distributed to it as a secured creditor in the confirmed plan of reorganization." Id. In its brief on appeal, the Committee contended that Moulton's recovery on its secured claim was limited by the Order of Approval and Writ of Attachment to $700,000.00. Appellant's Brief at 10-12. At oral arguments, the Committee abandoned that argument, conceded that Moulton was entitled to recover $820,000.00, and limited its appeal to Moulton's recovery of $159,250.00, the amount held back by the Distribution Order. Moulton's right to $820,000.00 is therefore no longer an issue on appeal.
*84 $159,250.00
The principle focus of the Committee's due process argument is that the hearing mandated by Rule 4.1 in response to Terranova v. AVCO Financial Services of Barre, Inc., 396 F.Supp. 1402 (D.Vt.1975), required a judicial determination of the amount of an attachment so that a subsequent judgment would relate back to that amount. Appellant's Brief at 11-12. See also Appellant's Reply Brief at 3-7.[6] Moulton counters that the due process concerns of Terranova were satisfied because there was a hearing and a judicial determination as required by Rule 4.1. Appellee's Brief at 11-12. The resolution of that controversy centers on how Rule 4.1 was intended to cure the due process issue raised by Terranova and then how that Rule affected the statutory scheme of 9 V.S.A. § 1921 et seq.
In rejecting the Committee's argument, the bankruptcy court stated: "[T]he purpose of . . . subsection [V.R.C.P. 4.1(b)] is to require the plaintiff to prove the existence of a potential claim of value and to establish the plaintiff's ability to obtain a writ, especially when there is limited notice." Rainbow Trust I, supra, 200 B.R. at 789. Further, "[t]he final judgment establishes the amount of the debt which is secured by the judicial lien created upon the prejudgment attachment." Id. The court reached that conclusion after determining that Moulton had satisfied the statutory and procedural requirements to obtain and maintain a contractor's lien. We agree.
A review of Vermont's contractor's lien procedure supports the bankruptcy court's analysis and conclusions. Vermont's first contractor's lien statute, "An Act Relating to Mechanics' Liens," was enacted in 1849. That Act granted a mechanic's lien to persons who performed labor or furnished material on a "ship, vessel, or steamboat," or on a "house or other building." While the holder of a lien upon a vessel was given the right to "secure" its lien by an attachment, the holder of a lien upon real property did not have that right until 1862. See General Statutes, Chapter 108, §§ 1-4 (1862). The 1862 amendment, which was the beginning of the present contractor's lien procedure, provided for the commencement of an action to enforce the lien and the attachment of property within a three month statutory period.
Rule 4.1 V.R.Civ.P. was first promulgated in 1971 and essentially provided for the attachment of real property without a hearing, but required a hearing for the attachment of "any property other than real estate." In 1975, a three-judge panel of the District Court of Vermont concluded that the attachment of real property "constitutes a significant property deprivation . . . that . . . impairs the market value and marketability or mortgageability of the real estate . . . and involves the curtailment of economically important property uses." Terranova v. AVCO Financial Services of Barre, Inc., supra, 396 F.Supp. 1402, 1406-07. The court concluded that the version of Rule 4.1 then in force violated the Due Process Clause of the Fourteenth Amendment and held that:
[E]xcept in extraordinary situations the prejudgment attachment of real estate belonging to an in-state resident may be effected only after notice to the owner and a hearing, presided over by a judicial officer, at which hearing it must be determined *85 that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance or bond shown by the defendant to be available to satisfy the judgment. In effect, then, our decision treats real estate attachments as possessory attachments are already treated in Vermont.
Id. at 1407 (footnotes omitted). See also Connecticut v. Doehr, 501 U.S. 1, 12, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) (citations and internal quotation marks omitted) ("Without doubt, state procedures for creating and enforcing attachments, as with liens, are subject to the strictures of due process"). In 1979, as a direct result of Terranova, Rule 4.1 was amended to require notice and hearing prior to the issuance of writs of attachment in all instances, except in exigent circumstances. Thus, Rule 4.1(b)(2) provides that "an order of approval may be issued only upon motion . . . and upon hearing and a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment. . . ."
There is no language in the amended Rule which limits the reach back of a judgment to an attachment. In fact, subsection (a) provides that real property may "be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover." See also Rainbow Trust I, supra at 789; In re APC Construction, Inc., 112 B.R. 89, 105 (Bankr.D.Vt.1990), aff'd 132 B.R. 690 (D.Vt.1991), quoting Goodro v. Tarkey, 112 Vt. 212, 215-16, 22 A.2d 509 (1941). Moreover, to reason that a contractor's lien is perfected only to the amount of an attachment would nullify an established legislative objective of compensating contractors for work performed and ignore the separate statutory schemes that pertain to an attachment and a contractor's lien.
It is further noted that once a judgment is timely recorded under § 1925, the real estate is "be holden for the amount due upon such judgment . . . from the time of the visible commencement of work or delivery of materials." Thus, under Vermont law, the reach back of a judgment is not limited by the amount of an attachment, but rather the attached property is encumbered by the full amount of a plaintiffs judgment subject to the priority of a contractor's lien and the available equity. See §§ 1921(d), 1923.[7]

Rule 62 V.R.Civ.P. Automatic Stay
The Committee argues that the Judgment was invalid because Moulton violated the automatic stay imposed by Rule 62(a)(1) V.R.Civ.P. when it recorded the Judgment. See Appellant's Brief at 15. That argument, which was also raised in the joint motion for reconsideration, see Memorandum in Support of Plaintiffs' Motion for Reconsideration at 6, was not resolved by the bankruptcy court.
With exceptions not relevant here, Rule 62(a)(1) provides that ". . . [N]o writ of execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry or until the time for appeal from the judgment as extended by Appellate Rule 4 has expired." The question we must address therefore is whether the act of recording *86 constitutes a "proceeding" for the "enforcement" of a judgment.
There appears to be no Vermont law directly on point.[8] Moreover, Second Circuit jurisprudence is silent on a resolution of this issue under Rule 62 F.R.Civ.P., the federal counterpart to the Vermont automatic stay provision. Other jurisdictions, however, have concluded that the recording of a judgment does not constitute a proceeding to enforce a judgment and therefore is not prohibited by Rule 62 F.R.Civ.P. See e.g., Yusov v. Yusuf, 892 F.2d 784, 785 n. 1 (9th Cir.1989) citing 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 62.03 n. 6 (2d ed.1987); Vanden Bossche v. Hartford Accident and Indemnity Company (In re Vanden Bossche), 125 B.R. 571, 573 (N.D.Cal.1991). See also Allen v. First Alabama Bank (In re Sintz), 162 B.R. 572, 573-74 (Bankr.S.D.Ala.1993) (court determined that similar Alabama statute which imposed 30 day stay did not prohibit recordation of certificate of judgment). We adopt that view and conclude that the automatic stay under Vermont law did not prohibit Moulton from recording its Judgment.

Preferential Transfer under § 547(b)
The Judgment was obtained on April 18 and recorded on April 19, 1994. Rainbow Trust filed its bankruptcy petition on May 10, 1994. In addressing the preference issue, the bankruptcy court determined that Moulton's contractor's lien was a statutory lien and was thus not avoidable under § 547(c)(6). See Rainbow Trust II, supra, 207 B.R. at 76.
In Klein v. Civale & Trovato, Inc., (In re Lionel Corporation), 29 F.3d 88, 94-95 (2d Cir.1994), the Court of Appeals held that "mechanic's liens qualify as statutory liens . . . under § 547(c)(6) and cannot be avoided as a preferential transfer." That decision cited, inter alia, In re APC Construction, Inc., 132 B.R. 690 (D.Vt.1991), in support of its conclusion. See also H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 14 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813, 6271 ("A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples"). Therefore, the conclusion reached by the bankruptcy court is correct.
Further, § 1925 provides that upon the filing of a certified copy of a judgment, the real estate "shall be holden for the amount due upon such judgment . . . as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials. . . ." Not only does that provision provide for payment to Moulton of the full amount of the Judgment, but it also relates the Judgment back in time to the "time of the visible commencement of work," which in this case was at some point in late 1992 and well outside of the preference period.

Appropriate Interest Rate on Holdback Amount
The Committee's final argument is that if the panel affirms the bankruptcy court, the interest rate applicable to the $159,250.00 hold back amount is not 5.35%, as provided by the bankruptcy court's March 27, 1997 order or the confirmed plan, but rather the interest rate that was applied to the account in which the balance of the sales proceeds, including the hold back, was deposited. Appellant's Brief at 18-19. The Committee does not allege that Moulton is not entitled to interest on the $159,250.00.
On December 22, 1995, an order entered on the Committee's ex parte application which permitted the sale proceeds to be deposited in a money market mutual fund. On October 4, 1996, the bankruptcy court granted Moulton's cross motion for summary judgment, see Rainbow Trust I, supra. The Committee objected ". . . to that portion of Moulton's proposed Order which contains an interest rate in excess of the Court's order of December 22, 1995." Committee's October 15, 1996 Objection at ¶ 4. The record does not contain a copy of the proposed order, nor does it indicate that a ruling entered on the *87 Committee's objection. The court's March 27, 1997 order calculated the applicable interest rate at 5.35%.
The Distribution Order provided for a distribution of sale proceeds to secured creditors of Rainbow Trust, including Moulton. It provided: "The applicable interest rate is 5.35% for a month Treasury Bill as of July 6, 1995." Distribution Order n. 2. The plan adopted that interest rate for the treatment of its Class I secured claims, and Moulton is entitled to the benefit of that rate on its hold back amount.

CONCLUSION
For the foregoing reasons, the order of the bankruptcy court is affirmed. Our disposition of this matter renders it unnecessary to address Moulton's cross appeal.
NOTES
[1] "`Contractor's lien' is merely Vermont's statutory term for `mechanic's lien' and the two terms are used interchangeably by the Vermont Supreme Court." Glinka v. Hinesburg Sand and Gravel, Inc. (In re APC Construction, Inc.), 132 B.R. 690, 693 n. 2 (D.Vt.1991) (citations omitted).
[2] On April 4, 1997, the Committee also filed a motion seeking a stay pending appeal of the bankruptcy court's March 27, 1997 order. On April 7, 1997, the bankruptcy court denied that motion. On May 22, 1997, the Committee filed an emergency stay motion with this Panel. On June 20, 1997, the Panel denied that motion, without prejudice to bringing a second stay motion in the bankruptcy court, because the Committee's "offer of a cash bond in order to obtain a stay pending appeal was not presented to the Bankruptcy Court in the first instance." June 20, 1997 Panel Order. The Panel, however, granted a limited stay if the Committee filed its second stay motion with the bankruptcy court by June 27, 1997. On that date, the Committee filed a second motion with the bankruptcy court, which was granted on August 6, 1997.
[3] It is noted that the Committee stated in its Supplemental Memorandum in Support of Summary Judgment: "It is clear, based on the [S]tipulation, that the parties never intended the $120,420 payment or the additional $145,336 liability to be secured by the [contractor's] lien at issue, and that only $700,000 of the settlement related to the [contractor's] lien." Supplemental Memorandum at 7. While the question of the parties' intent may raise an issue of fact, that issue was not identified as an issue on appeal.
[4] See n. 7 infra at 85.
[5] Pursuant to § 1925, Moulton also properly recorded the Judgment within the five month statutory period. As noted by the bankruptcy court, the Judgment was not required to be either final or contain a notation as to the date of its finality. See Rainbow Trust II, supra, 207 B.R. at 74. See also Discussion infra at 85-86.
[6] The Committee also argues that the enlargement of the amount of an attachment would "open the door for massive bankruptcy fraud on the part of Vermont contractors, and contractors in other states with a comparable relation back statute. . . . [since] [a]ny contractor who has a personal relationship with the debtor . . . would easily be able to circumvent the preference limitations . . . by obtaining a writ of attachment for a nominal amount . . . and have the entire amount of the judgment be secured by the real estate that had previously been attached for a nominal amount." Appellant's Brief at 13. See also Appellant's Reply Brief at 2-3. That argument presupposes that the amount of an attachment is determined by parties without any rational relation to either a contractor's lien or a potential judgment and essentially ignores the role of the court in the attachment procedure established by Rule 4.1.

Further, the argument that if an attachment may be enlarged to incorporate the entire amount of a judgment, id. at 5, the extent of an encumbrance on real property could not be ascertained from a title search does not bolster the Committee's reach back limitation argument. That argument ignores the fact that when Moulton filed and recorded its Notice, it asserted a contractor's lien for $1,326,804.65.
[7] As noted, the Committee relied on Rule 4.1 to support its due process argument that the amount of the Judgment that relates back to the contractor's lien is limited to the amount of the attachment. The issue of whether the Fourteenth Amendment requires the hearing provided by Rule 4.1 to go further than a judicial determination that there is "a reasonable likelihood that the plaintiff will recover judgment . . . in an amount equal to or greater than the amount of the attachment . . ." was not raised below and is not before us on appeal. We note, however, that there is authority for the conclusion that the amount of a judgment that relates back is limited to the amount of the attachment where there is a general attachment statute. See, e.g., Union Trust Company v. Heggelund, 219 Conn. 620, 625, 594 A.2d 464 (1991) (citations and internal quotation marks omitted) ("In undertaking the probable cause analysis that our present statute requires, a court is required to consider not only the validity of the plaintiff's claim but also the amount that is being sought. . . . Such an analysis would be pointless if the attachment were to be a growing quantity, increasing with the accumulation of costs and enlarging as more damages are demanded"). In this case, however, § 1925 specifically relates the Judgment back to the "visible commencement of work or delivery of materials."
[8] In a 1989 unpublished decision, Chief Judge Conrad found that recording a judgment was not an act of execution that would violate Rule 62 V.R.Civ.P. stating: "Recording a judgment lien and executing on it are two separate and distinct procedures. . . ." See In re Prussack, No. 88-00007, 1989 WL 360853, at *2 (Bankr.D.Vt. July 19, 1989).