**POLY INDUSTRIES, INC., Appellant,**

v.

**Don S. MOZLEY et al., Appellees.**

**No. 19972.**

United States Court of Appeals
Ninth Circuit.

June 17, 1966.

Gibson, Dunn & Crutcher, Herman L. Glatt, Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., for appellant.

Adrian Kuyper, County Counsel, Arthur C. Wahlstedt, Jr., Deputy County Counsel, Santa Ana, Cal., for appellees.

Before BARNES and MERRILL, Circuit Judges, and TAYLOR, District Judge.

BARNES, Circuit Judge.

This is an appeal from an order of the district court which affirmed an order of a referee in bankruptcy. The district court had jurisdiction pursuant to 11 U.S.C. § 11. This court has jurisdiction pursuant to 11 U.S.C. § 47.

Appellee Don S. Mozley is the Tax Collector of the County of Orange, State of California. Appellant Poly Industries, Inc., a corporation, owned a subsidiary known as Ador Corporation which was subject to county taxes in Orange County. In March 1962 and 1963, Mozley assessed personal property taxes against the Ador Corporation. These tax obligations had not been paid at the time these proceedings were instituted.

On January 31, 1963 Poly Industries initiated a Chapter XI proceeding under the Bankruptcy Act. On June 7, 1963 Ador Corporation initiated Chapter XI proceedings also. Poly Industries proposed a consolidated arrangement for itself and Ador Corporation pursuant to Chapter XI. Under the terms of the arrangement, creditors of Ador became creditors of Poly and took Poly stock in satisfaction of their claims. In order to satisfy the claims of priority creditors who could not be forced to take stock in Poly in lieu of their claims, Poly sold some of its real property and the stock of Ador to a Mr. Carl Reinhard for a large cash payment. As part of the sale to Reinhard, Poly agreed to hold Ador

Corporation (Reinhard) harmless from various types of claims arising prior to the arrangement. One such anticipated claim was the tax obligation of Ador to Orange County, and part of the hold-harmless agreement was that Poly would deposit $50,000 of its money in a trust account with the understanding that the money would be used to pay any tax claims found to be owing and the remainder of the money would be returned to Poly. This consolidated arrangement of Ador and Poly was confirmed by the referee in bankruptcy on July 18, 1963.

On July 30, 1963 appellee Mozley filed claims 168 and 169 in the arrangement proceedings, representing the unpaid 1962–1963 taxes of Ador, together with interest and penalties. These claims aggregated in excess of $46,000. Appellant filed objections to the tax claims of appellee and a hearing was set and continued on three occasions. The hearing was finally held on December 20, 1963 without Mozley or his counsel putting in an appearance. In his findings and conclusions filed on January 2, 1964, the referee sustained appellant's objection to the tax claims on the basis of sections 57j and 64a(4) of the Bankruptcy Act, 11 U.S.C. §§ 93j, 104a(4). Section 57j disallows debts owing to the United States or the States which are penalties or forfeitures except for the amount of actual loss or cost to the taxing entity arising from the transaction from which the penalty arose. Section 64a(4) provides that although tax claims shall have a priority over payment to creditors, "no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. * * * " The referee found that at the time the personal property taxes were assessed, Ador's assets were all encumbered to the hilt and that Ador actually had an interest in none of the assets which it possessed with the exception of $350 in cash which was on hand on June 7, 1963 when Ador petitioned for a Chapter XI arrangement. The referee allowed the tax claims of appellee to the extent of the unencumbered $350, and disallowed the remainder of the claims pursuant to sections 57j and 64a(4) of the Bankruptcy Act.

Following the referee's January 2, 1964 decision, Poly petitioned the referee for an order directing it to pay Mozley the $350, to return the balance of the $50,000 deposit to Poly, and to permanently enjoin Mozley from ever attempting to collect his tax claims in these or other proceedings. Hearing was had on this petition, at which Mozley and his counsel were again absent. On April 24, 1964 the referee granted Poly's petition.

In the meantime, Mozley had on April 2, 1964 recorded two certificates of delinquency relating to the tax claims against Ador. Upon their recordation the certificates became a lien upon the assets of the reorganized Ador Corporation. Prior to the recordation the tax claims had the standing of a *priority* under the Bankruptcy Act; after the recordation they became a *lien*, with a higher standing, under the Bankruptcy Act.

Armed with his recorded statutory liens, and alleging excusable neglect in not having appeared to oppose Poly's petition for injunction, Mozley petitioned the referee to vacate his order of April 24, 1964 and the injunction contained in that order. Poly responded with a petition to the referee to broaden the injunction he had granted in the April 24, 1964 order so as to compel Mozley to withdraw his lien or to file satisfactions of the recorded delinquency certificates. The referee held hearings on the petition and counter-petition and on July 22, 1964 vacated his order and injunction of April 24, 1964, and denied Poly the additional injunctive relief which it sought. In reaching this decision the referee relied upon section 17 of the Bankruptcy Act, 11 U.S.C. § 35, and the case of Bruning v. United States, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) to find that the recorded tax liens were nondischargeable debts and that it would be an abuse of his discretion to enjoin Mozley from collecting a nondischarge-

able debt. The effect of this decision was to permit Mozley to satisfy his tax claim in full out of the $50,000 deposit made pursuant to the hold-harmless agreement between reorganized Ador (Reinhard) and Poly.

Poly petitioned the district court for review of the July 22, 1964 order of the referee. The district court affirmed the July 22, 1964 order and this appeal by Poly followed.

We affirm the judgment of the district court. Affirmance is compelled in the circumstances of this case for two reasons, each of which is individually sufficient to require affirmance.

## I. THE INJUNCTION OF APRIL 24, 1964.

■ In his order of January 2, 1964 and in his order and injunction of April 24, 1964, the referee in bankruptcy relied exclusively upon sections 57j and 64a(4) of the Bankruptcy Act in disallowing all but $350 of appellee Mozley's tax claims and in enjoining him from ever attempting to collect the taxes. It was not until Mozley had recorded his tax claims and thus converted them into statutory liens that the referee considered section 17 of the Bankruptcy Act and the case of Bruning v. United States, supra, and found that the recorded tax liens were nondischargeable debts the collection of which could not be enjoined. We believe that the referee fell into error when he failed to apply section 17 of the Bankruptcy Act and the reasoning of Bruning v. United States, supra, to the tax claims of appellee even before those tax claims were recorded and thereby converted into liens. We believe that the application of such reasoning would have revealed that the tax claims were nondischargeable debts even before they acquired lien status, and their collection should therefore not have been enjoined, even prior to their recordation and conversion into statutory liens.

■ Section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35a(1), provides in pertinent part that "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, or any State, county, district, or municipality; * * *." Section 371 of the Bankruptcy Act, 11 U.S.C. § 771 (which is one of the provisions of the Chapter XI arrangement provisions) provides that "The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 17 of this act, are not dischargeable." The effect of section 17 is to make county taxes such as those involved in this case nondischargeable in bankruptcy, and to leave the bankrupt still liable for the taxes even after he has received a discharge in bankruptcy. The effect of section 371 is to specifically carry section 17 into the Chapter XI arrangement proceedings and in effect to provide that while the confirmation of a Chapter XI arrangement acts the same as a discharge in bankruptcy as to most debts and liabilities, it does not act as a discharge from liability for county taxes which are made nondischargeable by section 17. See 9 Collier, Bankruptcy §§ 9.25[6], 9.32[9].

■ The rule that tax claims are nondischargeable debts which survive bankruptcy or arrangement proceedings was recognized in the recent Supreme Court decision in Bruning v. United States, supra. Although the *Bruning* decision deals primarily with liability for interest on tax claims, the Court had occasion to note the continuing liability of the bankrupt for tax claims not satisfied out of the bankrupt estate:

"It is undisputed that, under § 17, petitioner remained personally liable after his discharge for that part of the principal amount of the tax debt and pre-petition interest not satisfied out of the bankruptcy estate.

\* \* \* \* \* \*

"As the Court of Appeals noted, § 17 is not a compassionate section for

debtors. Rather, it demonstrates congressional judgment that certain problems—e. g., those of financing government—override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy." 376 U.S. at 360–361, 84 S.Ct. at 907–908.

While a tax claim not made into a lien might be subject to a limitation on its payment during the course of bankruptcy or arrangement proceedings by section 64a(4), the fact that such a limitation could be imposed would not mean that the rest of the claim ceased to exist. On the contrary, the effect of limiting the amount of the claim allowed through application of section 64a(4) would seem to be that the remainder of the claim continues in existence and may be enforced against the bankrupt or, as here, against the reorganized owner of the property, even after a discharge, it is because the tax claims are nondischargeable and continue in existence after the bankruptcy or arrangement proceedings have been completed that counsel have not been able to cite any cases where collection of taxes was permanently enjoined. We thus conclude that it was error for the referee to issue his April 24, 1964 injunction restraining the collection of a nondischargeable debt. That error was cured when the referee lifted the injunction in his decision of July 22, 1964.

## II. THE TAX LIENS OF APRIL 2, 1964.

█ The second reason that the order of the district court must be affirmed springs from appellee Mozley's recordation of the certificates of delinquency on April 2, 1964. By recording, the certificates of tax delinquency became tax liens, and tax liens are not subject to the limitation on their payment during the pendency of bankruptcy or arrangement proceedings that mere tax priorities are subject to under section 64a(4) of the Bankruptcy Act. This position is recognized, and supporting authority cited, in 3 Collier, Bankruptcy § 64.403:

"The principle expounded by the Supreme Court in City of Richmond v. Bird, and the cases which concur therewith—that § 64 does not apply to tax claims which are secured by valid liens —is apparently broad enough to limit *all* the provisions of § 64a(4) to unsecured tax claims alone. Nevertheless, there has been some authority for the proposition that the provision of § 64a(4) which gives the bankruptcy court the power to determine the legality and amount of tax claims is meant to include taxes secured by valid liens as well, and that the bankruptcy court can re-examine the assessment of taxes even after they have become perfected liens. This particular doctrine itself must be re-examined, however, in view of the recent Supreme Court decision in Arkansas Corporation Commission v. Thompson, which limited the bankruptcy court's general power to determine and revise the assessment of taxes. It is settled, however, that the proviso of § 64a(4) limiting the payment of a tax assessed against property of the bankrupt to the value of the interest of the estate therein does not affect the recognition of valid liens.

"Although, in general, the priority status of a claim is fixed as of the date of filing the petition, tax claims which are entitled only to priority under § 64a(4) may subsequently become perfected liens, even after an adjudication. It has also been decided that a tax claim which would have been entitled to be secured as a lien, but which was not perfected in accordance with the statutory procedure, may still be paid as a tax claim under § 64a(4)." (Footnotes omitted.) Cf. also 3 Collier, Bankruptcy § 64.401[2].

█ Moreover, it has been recognized that a lien does not lose its preferred standing by reason of the fact that it is not perfected until after the commencement of bankruptcy or Chapter XI proceedings. Section 67b of the Bankruptcy Act, 11 U.S.C. § 107b, specifically authorizes such perfection, and Collier supports

the practice with text and authority. 4 Collier, Bankruptcy § 67.20[8]:

> "The first sentence of subdivision b states clearly that statutory liens
>> 'may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this Act or by against him.'

Certainly this provision is applicable where proceedings are begun under Chapter X, XI, XII, XIII and are subsequently followed by adjudication of the debtor as a bankrupt. But a reasonable interpretation would also give effect to the quoted provisions in Chapter X, XI, XII, or XIII proceedings that are successfully terminated thereunder and hence do not end in bankruptcy, whether (1) the proceeding is begun in bankruptcy and is followed by a successful Chapter X, XI, XII or XIII proceeding, or (2) is originally begun and successfully ends as a Chapter X, XI, XII or XIII proceeding. Moreover the subdivision now clearly applies in railroad reorganization proceedings under § 77.

> "The second sentence of subdivision b authorizes the perfection of statutory liens that arise but are not perfected before *bankruptcy* and makes no reference to the perfection of liens after the filing of a petition under the debtor relief chapters. Since, however, 'bankruptcy' when used with reference to time means 'the date when the petition was filed,' and 'petition' means a 'document initiating a proceeding under this Act,' the second sentence appears to have as broad an application as the first sentence of subdivision b. There would seem to be no fundamental policy or principle peculiar to reorganization or arrangement proceedings which would be nullified by permitting perfection of inchoate liens after their commencement." (Footnotes omitted.)

While raising various suggestions as to the impropriety of appellee Mozley's having recorded the tax delinquency certificates and thus converted the tax priorities into tax liens, appellant has been unable to cite any authority for the position that this conduct was not permissible. In light of the favored status of statutory liens and of the protection which taxes are accorded in any event by sections 17 and 371, and in the absence of any showing that appellee acted beyond methods specifically provided under the Bankruptcy Act, we cannot conclude that the district court or the referee erred in granting and affirming the order of July 22, 1964.

The order of the district court affirming the decision of the referee is affirmed.