**In re Tammy J. CUSSON, et al., Debtors.**

**James A. Naylor d/b/a Naylor Construction, Appellant,**

**v.**

**Tammy J. Cusson and Dorothy Ducharme, Appellees.**

Nos. 2:08–CV–057, 2:08–CV–058.

United States District Court, D. Vermont.

April 3, 2009.

*Opinion and Order*

WILLIAM K. SESSIONS, III, Chief Judge.

The appellant, James A. Naylor d/b/a Naylor Construction ("Naylor") appeals from two orders of the United States Bankruptcy Court for the District of Vermont (Brown, J.). This case is a consolidation of those two appeals.[1] The first order entered on January 17, 2008 granted the Debtors' motions to reopen their respective bankruptcy cases. (Doc. 25.) The second order entered on July 21, 2008 granted the Debtors' motions to avoid Naylor's lien. (Doc. 61.)

In his appeals, Naylor argues, in short: (1) that the Bankruptcy Court abused its discretion in re-opening the Debtors' bankruptcy cases; (2) that the Bankruptcy Court incorrectly construed Vt. Stat. Ann. tit. 9, § 1925 while determining that Naylor's contractors' lien was not valid; (3) that the Bankruptcy Court erroneously considered facts that did not exist at the time the Debtors filed their bankruptcy petitions; and (4) that the Bankruptcy Court incorrectly concluded that the Debtors lawfully refinanced their property even though it was subject to Naylor's contractors' lien. (Br. Of Appellant 11–20.)

The Bankruptcy Court's decision granting the motion to reopen lacked finality, and Naylor's first appeal from it must be dismissed for lack of jurisdiction. Naylor's second appeal, consolidated with the first

---

1. There are two bankruptcies at issue in this case. The appellees, Tammy J. Cusson and Dorothy Ducharme (collectively the "Debtors"), are partners who individually filed bankruptcy petitions. Tammy J. Cusson's Chapter 7 case is Bankr.No. 06–10195. Dorothy Ducharme's Chapter 7 case is Bankr.No. 06–10154. All citations contained herein refer to the docket entries in Tammy J. Cusson's cases.

appeal, addresses both the decision to re-open the bankruptcy cases and the decision granting the lien avoidance. Both decisions are **affirmed.** Naylor's pending motions for stay are **dismissed** as moot.

### Factual Background

The following facts are undisputed unless otherwise noted. The Debtors jointly own a homestead property located at 21 Clifford Street, Winooski, Vermont. On April 1, 2004, the Debtors contracted with Naylor to replace the concrete foundation supporting their home. Shortly thereafter, Naylor performed most of his obligations under the contract, but the Debtors disputed the amount due under the contract and the quality of some work that Naylor had performed. On September 28, 2004, Naylor filed a Notice of Contractors' Lien ("lien") dated September 27, 2004 against the Debtor's property and recorded it in the Winooski land records at volume 158, page 173. In order to perfect his lien, Naylor sued the Debtors in Chittenden County Superior Court, Docket No. 142–05–CnC, for breach of contract and damages under Vermont's Prompt Payment Act ("VPPA"), Vt. Stat. Ann. tit. 9, §§ 4001–4009 (2006). On March 25, 2005, Naylor obtained a Writ of Attachment and Order of Approval of Writ of Attachment in the amount of $20,000.00. Naylor promptly recorded this Writ in the Winooski land records at volume 162, pages 210–213.

On April 22, 2005, the Debtors refinanced 21 Clifford Street and granted a mortgage for $184,800.00 to Aegis Lending Corporation ("Aegis"). Aegis recorded this mortgage in the Winooski land records at volume 163, pages 341–355. The Debtors placed $20,000.00 from the refinance proceeds into escrow in order to satisfy Naylor's Writ if ever enforced. At this time the Debtors' property had an existing $6000.00 mortgage dated June 12, 1997 in favor of the Vermont Housing and Conservation Board ("VHCB"). The VHCB mortgage is recorded in the Winooski land records at volume 111, page 37.

On February 22, 2006, Naylor obtained a Judgment Order against the Debtors' attached property. The Superior Court awarded Naylor $42,594.92 plus interest and penalties: $25,000.00 due under the contract, $2210.00 in consequential damages, and $15,373.92 in attorney's fees and costs. The judgment included statutory interest at a rate of 12% per year and statutory penalties accruing at 1% per month from August 21, 2004 through February 22, 2006. To date, Naylor has not recorded this judgment in the Winooski land records.

The Debtors appealed from Naylor's judgment to the Vermont Supreme Court on March 23, 2006. A few weeks later, on April 13, 2006, the Debtors individually filed Chapter 7 bankruptcy petitions. As a result of these bankruptcies, Naylor was prevented from taking any action to enforce his judgment pursuant to the automatic stay provision of 11 U.S.C. § 362(a)(2). Thereafter, on May 16, 2006 Naylor moved the Bankruptcy Court for relief from the automatic stay to perfect his lien. (Doc. 9.) The Bankruptcy Court granted Naylor relief from stay on June 13, 2006. (Doc. 14.) During the pendency of their bankruptcies, the Debtors moved to avoid Naylor's lien but voluntarily withdrew the motion. On August 7, 2006, the Bankruptcy Court issued an order discharging the Debtors' bankruptcy cases. (Doc. 17). Two weeks later, the Bankruptcy Court issued a final decree closing the Debtors' bankruptcy cases. (Doc. 19.)

On September 18, 2007, the Vermont Supreme Court affirmed Naylor's February 22, 2006 judgment in *Naylor v. Cusson (Naylor I)*, 182 Vt.627, 940 A.2d 717 (2007) (mem.). Thereafter, Naylor requested

that the Chittenden County Superior Court issue a final judgment order including post-judgment attorney's fees under the VPPA. This motion was denied on July 16, 2008. Naylor appealed from this denial to the Vermont Supreme Court, and the Vermont Supreme Court affirmed the Superior Court's denial in an unpublished entry order. *Naylor v. Cusson (Naylor II),* No.2008–327, 2009 WL 426429, at *1 (Vt. Feb.4, 2009).

Meanwhile, on November 29, 2007, the Debtors moved the bankruptcy court to reopen their respective Chapter 7 cases. (Doc. 21.) They concurrently moved to determine the secured status of Naylor's lien, and alternatively, to avoid Naylor's lien ("lien avoidance motion"). (Doc. 22.) Naylor opposed both of these motions. (Doc. 23.) After hearing arguments, the Bankruptcy Court re-opened the Debtor's cases on January 18, 2008, and reserved ruling and argument on the lien avoidance motion. (Doc. 25.) Naylor appealed from the order which reopened the bankruptcy cases directly to this Court on January 25, 2008. (Doc. 27.) A few months later, the Bankruptcy Court issued an order and memorandum of decision granting the lien avoidance motion dated July 21, 2008. (Docs. 60 & 61.) Naylor then appealed from this order directly to this Court on July 28, 2008. (Doc. 67.)[2] On August 4, 2008, Naylor filed an emergency motion for stay of the Bankruptcy Court's July 21, 2008 order with this Court, which was denied without prejudice on September 2, 2008. On October 10, 2008 Naylor renewed his emergency motion for stay of the July 21, 2008 order pending his appeal to this Court.

## Discussion

Section 158(a) of Title 28 gives this Court jurisdiction to hear an appeal from a final order of a bankruptcy court from the District of Vermont. 28 U.S.C. § 158(a); *see also* Fed. R. Bankr.P. 8001(a). However, an appellant may only appeal from an interlocutory order with leave from the bankruptcy court. *See* Fed. R. Bankr.P. 8001(b); 28 U.S.C. § 158(a)(3).

A bankruptcy court's decision to re-open a bankruptcy case will be upheld absent an abuse of discretion. *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1307 (2d Cir.1996). This Court will affirm a Bankruptcy Court's "factual findings unless clearly erroneous" and review its legal conclusions regarding lien avoidance *de novo. Id.* at 1306 (citing *Bethpage Fed. Credit Union v. Furio (In re Furio),* 77 F.3d 622, 624 (2d Cir.1996)); *see also* Fed. R. Bankr.P. 8013.

## I.

■ With respect to Naylor's first appeal, this Court lacks jurisdiction to consider its merits because Naylor did not follow requisite appellate procedure in bringing it. Naylor appealed from the order directly to this Court. However, at the time Naylor brought his first appeal, the order from which he appealed was interlocutory and not final.

■ A final order "finally dispose[s] of discrete disputes within the larger case." *Shimer v. Fugazy (In re Fugazy Express),* 982 F.2d 769, 775 (2d Cir.1992) (citations omitted); *In re Chateaugay Corp.,* 880 F.2d 1509, 1511 (2d Cir.1989) (noting that while the concept of finality in bankruptcy matters is more flexible than in ordinary civil litigation, a final order is

**2.** The second appeal, docket no. 2:08–cv–181, was consolidated with 2:08–cv–057 and

closed on September 30, 2008.

one which "finally disposes of discrete disputes within the larger case.") (citations omitted). Additionally, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) (citing *St. Louis I.M. & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28, 2 S.Ct. 6, 27 L.Ed. 638 (1883)).

Here, the Bankruptcy Court's order granted the Debtors an opportunity to request a determination of the lien's secured status or, alternatively, to avoid the lien altogether. The order did not determine the lien's secured status, permit the Debtor's to avoid the lien, nor end the litigation on the merits. Rather, the order provided the Debtor's an opportunity to litigate on the merits. Because the order was not final Naylor should have requested leave from the Bankruptcy Court to appeal from it, but he did not. Therefore, Naylor's first appeal is dismissed.

■ With respect to Naylor's second appeal this Court reviews the Bankruptcy Court's decision to re-open the Debtors' bankruptcy cases for plain abuse of discretion. *In re Chalasani*, 92 F.3d at 1307; *see also In re Perlman*, 116 F.2d 49, 50 (2d Cir.1940).

■ A bankruptcy court has the discretion to re-open a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). However, a bankruptcy court's decision to re-open a bankruptcy case is subject to equitable defenses, such as laches. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. at 338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, 5963, 6294. A timely filed lien avoidance motion under 11 U.S.C. § 522(f)(1) has been held sufficient cause for re-opening a bankruptcy case under 11 U.S.C. § 350(b). *Matter of*

*Caicedo*, 159 B.R. 104, 105–06 (Bankr. D.Conn.1993); *see also Blake v. Ledan (In re Blake)*, 38 B.R. 604, 609 (Bankr. E.D.N.Y.1984) ("Lien avoidance constitutes sufficient cause to reopen a case.").

■ Additionally, neither section 350(b) nor Bankruptcy Rule 5010 limit when a section 350(b) motion must be filed. 11 U.S.C. § 350(b); Fed. R. Bankr.P. 5010; *cf. Harris v. Warshawsky*, 184 F.2d 660, 662–663 (2d Cir.1950) (permitting a motion to re-open even after a lapse of 12 years). Another provision, Bankruptcy Rule 9024, specifically exempts section 350(b) motions from the one-year time limitation imposed by Federal Rule of Civil Procedure 60(c)(1) for motions to obtain relief from a judgment order. Fed. R. Bankr.P. 9024; *Matter of Caicedo*, 159 B.R. at 106–107. Neither sections 506(d) nor 522(f)(1) of the Bankruptcy Code (the substance of the lien avoidance motion) impose time limitations. *See* 11 U.S.C. §§ 506(d), 522(f)(1). Therefore, a bankruptcy court may grant a section 350(b) motion to re-open a bankruptcy case for the purpose of hearing a lien avoidance motion subject to the defense of laches.

■ The Bankruptcy Court re-opened the Debtors' bankruptcy cases for sufficient cause—to hear the lien avoidance motion. *See Matter of Caicedo*, 159 B.R. at 105–06. However, Naylor argues that he was entitled to the defense of laches and that the Bankruptcy Court abused its discretion in denying him that defense.

■ "Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. Laches does not arise from delay alone, but from delay that works disadvantage to another."

*Stamato v. Quazzo*, 139 Vt. 155, 423 A.2d 1201, 1203 (1980) (citation omitted).

Naylor alleges that he is entitled to the defense of laches because the Debtors created the delay which unfairly prejudiced him. (Br. Of Appellant 18–19.) Specifically, Naylor argues that the Debtors initially made a lien avoidance motion in bankruptcy court, and then withdrew it; and after such withdrawal, Naylor sought relief from the automatic stay provision of 11 U.S.C. § 362(a)(2) in order to defend his judgment in the Vermont Supreme Court. Then, after losing on appeal, the Debtors reopened their bankruptcy cases to reconsider their previously withdrawn lien avoidance motion thereby forcing Naylor to defend his lien yet again. As a result of this delay, Naylor claims prejudice.

Naylor's argument is mistaken. Naylor's actions gave rise to the delay which he claims prejudiced him. Naylor did not have to request relief from stay to perfect his contractors' lien. An intervening bankruptcy does not automatically stay the post-petition perfection of a statutory lien that was already in existence at the time the bankruptcy petition was filed. *See Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Const., Inc.)*, 112 B.R. 89, 108–16 (Bankr.D.Vt.1990) (stating that the post-petition perfection of an inchoate statutory lien that came into being prior to the date of petition is not subject to the automatic stay provision of the Bankruptcy Code). Naylor's request for relief from stay permitted the Debtors to continue their appeal in the Vermont Supreme Court. Regardless of the delay the appeal may have created, it was Naylor's failure to perfect his lien that delayed the Debtor's from arguing the merits of their lien avoidance motion as well as provided them with a factual basis to re-open their bankruptcy cases to do so. The maxim "[e]quity helps the vigilant, not the dormant," applies with great force here. *Philbrick v. Johnson*, 91 Vt. 270, 100 A. 110, 112 (1917). Naylor created the delay which he now claims prejudiced him, and he was not vigilant, but dormant, in perfecting his lien.

■ Additionally, Naylor argues that the Bankruptcy Court was required to, but did not, make an affirmative finding that Naylor would not be prejudiced before it re-opened the Debtors' bankruptcy cases. (Br. Of Appellant 19.) However, Naylor carried the burden of factually establishing his affirmative defense of laches. *See* Fed. R.Civ.P. 8(c) (stating that the defense of laches must be affirmatively pled by the party relying on it); *see also Preston v. Chabot*, 138 Vt. 170, 412 A.2d 930, 931 (1980) ("Laches is an affirmative equitable defense, and the burden is on the party relying on it."). The Bankruptcy Court did not have to make an affirmative finding of non-prejudice. *Preston*, 412 A.2d at 931. "(L)aches is so much a matter of discretion by the lower court that action by that court should not be disturbed unless clearly shown to be wrong." *Laird Props. New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 305 A.2d 562, 570 (1973).

The Bankruptcy Court re-opened the Debtors' bankruptcy cases for a permissible purpose (to afford the Debtors relief by way of hearing their lien avoidance motion). Furthermore, the Bankruptcy Court was not required to make an affirmative finding of non-prejudice before re-opening the Debtors' bankruptcy cases. The burden of establishing prejudice rested with Naylor. Accordingly, the Bankruptcy Court did not abuse its discretion in re-opening the Debtors' bankruptcy cases.

**II.**

■ The existence of statutory contractors' liens and judicial liens that affect

real property are questions of state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Property rights in the assets of a debtor's estate are determined by state law. *Morton v. Nat'l Bank of New York City (In re Morton),* 866 F.2d 561, 563–64 (2d Cir. 1989). This Court will apply Vermont law, Vt. Stat. Ann. tit. 9, §§ 1921–1925 (2006), to determine the validity of Naylor's contractors' lien. *See, e.g., Robinson v. Howard Bank (In re Kors),* 819 F.2d 19, 22 (2d Cir.1987).

 In granting the lien avoidance motion, the Bankruptcy Court determined that Naylor did not have a valid contractors' lien as of April 13, 2006 because he failed to perfect his lien in accordance with Vermont law. Under Vermont law contractors are entitled to statutory liens against real property. All that is required of a contractor is strict compliance with the procedural steps set forth under Vermont Law. *See* Vt. Stat. Ann. tit. 9, §§ 1921–1925; *see also Goodro v. Tarkey,* 112 Vt. 212, 22 A.2d 509, 510 (1941); *Piper v. Hoyt,* 61 Vt. 539, 17 A. 798, 798–799 (1889). Timely procedural compliance with the statute provides diligent contractors with an equity of redemption and a preference over other creditors—a statutory lien. *Woodbury Lumber Co. v. McIntosh,* 125 Vt. 154, 211 A.2d 240, 241–42 (1965). The resulting well-perfected lien "will relate back to the time of recording of a notice of lien or 'visible commencement' of work." *In re APC Constr., Inc.,* 112 B.R. at 117.

 The necessity of strict compliance with the statute's procedures has been long recognized in Vermont. *See, e.g., Piper v. Hoyt,* 61 Vt. 539, 17 A. 798,

798 (1889) (requiring strict adherence because "the [statute] provides a special remedy in favor of a particular person. . . ."). More importantly, the lien is a creature of Vermont law and its existence depends entirely on the Vermont statute which created it. *Goodro,* 22 A.2d at 510; *see also Butner,* 440 U.S. at 55, 99 S.Ct. 914. Thus, a contractor who fails to comply with the statute's procedures risks the expiration of his lien. *See, e.g., In re APC Const.,* 112 B.R. at 103 (stating that failure to complete attachment within the statutory window causes the lien to be lost).

The procedures are simple. There are four steps.[3] First, a contractor must make a contract or agreement, whether oral or written, to erect, repair, move, or alter real property. Vt. Stat. Ann. tit. 9, §§ 1921(a). Any contractor who does shall have a lien to secure payment by giving written notice of the lien to the property owner. Vt. Stat. Ann. tit. 9, § 1921. Such lien will cover the portion of the contract price remaining unpaid at the time notice is given. *Id.*

Second, the contractor must file a written memorandum with the town clerk, asserting his claim for payment and charging the property with a lien as of the visible commencement of his work at the property. Vt. Stat. Ann. tit. 9, § 1923.

Third, within 180 days of filing the memorandum, a contractor must (1) commence an action, either on the contract or the lien statute, *and* (2) cause such property to be attached thereon. Vt. Stat. Ann. tit. 9 § , 1924. If the contractor receives a judgment in the action, the record of judgment must contain a brief notation of the contract on which the judgment is based. *Id.*

---

**3.** For a thorough analysis of Vermont's contractors' lien statute see *The Official Unsecured Creditors' Comm. of the Rainbow Trust* *v. Moulton Constr., Inc., (In re the Rainbow Trust),* 216 B.R. 77, 83 (2d Cir. BAP 1997).

Fourth, the contractor must record a certified copy of the judgment with the town clerk within five months of the date such judgment was issued. Vt. Stat. Ann. tit. 9, § 1925. The effect of recording the judgment is to encumber the attached property for the amount due on such judgment as if it had been mortgaged for the payment thereof. *Id.* Then, and only then, shall a contractor have the right to foreclose the lien as if it were a mortgage. *Id.*

 The effect of an intervening bankruptcy on a contractors' lien differs with respect to the action taken on the lien: perfection or enforcement. If a bankruptcy intervenes after judgment has been issued on the lien, then the automatic stay provisions of the bankruptcy code do not bar the post-petition perfection of the lien by recording the existing judgment. *In re APC Constr., Inc.,* 112 B.R. at 119–120. On the other hand, if the bankruptcy intervenes prior to judgment in an action to enforce the lien then the automatic stay provisions of the bankruptcy code bar the post-petition enforcement of the lien and toll the statutory period for enforcement. *Id.; see also In re Morton,* 866 F.2d at 564 (discussing the automatic stay provisions of the bankruptcy code with respect to statutory lien enforcement).

 The dispositive inquiry is whether Naylor perfected his lien by recording his judgment within the five month window set forth in section 1925. Naylor admits that he has not yet recorded his judgment. *See* (Br. Of Appellant 13) ("Naylor has not yet recorded his Judgment"). Therefore, Naylor failed to "strictly adhere" to the statute's procedures and his lien has expired. *In re APC Const.,* 112 B.R. at 125.

Naylor raises two additional questions, however, regarding the Bankruptcy Court's construction of Vt. Stat. Ann. tit 9, § 1925 that this Court will address.

 First, Naylor questions whether the Bankruptcy Court misconstrued section 1925 by failing to read into section 1925 the finality requirement of Vt. Stat. Ann. tit. 12, § 2904. Naylor argues that because his judgment was not, and is still not final, the section 1925 five-month window for recording his judgment has not yet been triggered. *Id.* Section 1925 does not contain the word "final." Neither do any of the other sections of Vermont's Miscellaneous Lien Statute, Vt. Stat. Ann. tit. 9, §§ 1921–1925. It is a cardinal rule of statutory construction that courts will not presume something that a Legislature has not plainly stated in a statute. *See Swett v. Haig's Inc.,* 164 Vt. 1, 663 A.2d 930, 932 (1995) (stating that when construing a statute courts "presume the Legislature intended the plain, ordinary meaning of the statute."); *see also In re Ahokas,* 361 B.R. 54, 61 (Bankr.D.Vt.2007) ("In general [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective.") (citation omitted).

Furthermore, courts have consistently held that the judgment referred to in section 1925 need not be final. *See e.g., The Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc., (In re the Rainbow Trust),* 216 B.R. 77, 83 n. 5 (2d Cir. BAP 1997) ("Pursuant to § 1925 ... the Judgment, [referred to therein,] was not required to be either final or contain a notation as to the date of its finality."); *see also In re Ahokas,* 361 B.R. at 65 n. 9 (same). Thus, for the purposes of section 1925, the judgment is not required to be final.

 Even assuming, *arguendo,* that Naylor's judgment did not become final until the Vermont Supreme Court affirmed it on September 18, 2007, on Naylor's own argument, his window for recording his

Judgment has still expired. That window expired on approximately February 18, 2008–five–months from September 18, 2007. But Naylor, by his own admission, has yet to record his Judgment. (Br. Of Appellant 13.)

■ Second, Naylor questions whether the Bankruptcy Court had the power to consider facts that emerged after April 13, 2006 (the date on which the Debtors filed their Chapter 7 petitions). In principle, Naylor argues that the Bankruptcy Court's determination that his lien had expired prior to April 13, 2006 was "patently erroneous." (Br. Of Appellant 9.) In support of this argument, Naylor argues that the Bankruptcy Court defied the law, and erroneously considered in its analysis, as fact, the post-April 13, 2006 actions that Naylor took, or did not take, with respect to perfecting his contractors' lien. *Id.* As such, Naylor claims that had the Bankruptcy Court followed the law, it would have determined that he had a valid contractors' lien as of April 13, 2006.

The thrust of Naylor's argument is correct, but his conclusions are wrong. Bankruptcy law regarding exemptions and impairments to real property refers to a specific point in time, and Naylor correctly argues that the point in time, applicable here, was April 13, 2006. *See* (Br. Of Appellant 10) (quoting *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924)). Nevertheless, the relation back framework of the contractors' lien statute creates a lien that relates back to, and is effective as of, the date on which a contractor "visibly began" his work. *See* Vt. Stat. Ann. tit. 9, § 1925.

■ The relation back concept, albeit "peculiar," is long and well recognized in Vermont. *See In re APC Const.,* 112 B.R. at 113–117 (discussing at length the workings in bankruptcy of contractors' liens that relate back in time). Vermont law "recognizes [that] a timely perfected contractors' lien will relate back to the time of recording of notice of lien or the 'visible commencement' of work." *Id.* at 112 (citations omitted). "If a creditor possesses a [pre-petition] interest in property, and state law establishes a time period for perfection of a lien based on that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy' so long as it is perfected within the time period established by state law." *Lincoln Savings Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1546 (2d Cir.1989) (quoting *Poly Indus., Inc. v. Mozley,* 362 F.2d 453, 457 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966)). Here, timely perfection would have related the lien back to as early as April of 2004, the month in which Naylor visibly commenced work under his contract with the Debtors.

Even though the Bankruptcy Court considered facts that actually occurred postpetition, those facts related back to a prepetition date by way of the statute's relation back framework. The analysis is simple; either Naylor perfected his lien or he did not. If he did, then his lien would have been effective as of the date he began working. If he did not, then his lien expired as of the date he began working. The fact of the matter is that Naylor failed to perfect his lien within the statutory five-month window. The result of such failure is an expired lien, and the Bankruptcy Court correctly considered Naylor's postpetition actions in reaching this conclusion. Therefore, Naylor did not have a contractors' lien against the Debtors' property as of April 13, 2006. The Bankruptcy Court correctly concluded the same.

### III.

■ Having determined that Naylor's lien had expired, the Bankruptcy Court

advised that if Naylor were to record his judgment, thereby creating a judicial lien, the Debtors could avoid this lien for impairing their homestead exemption pursuant to 11 U.S.C. § 522(f)(1)(a). For the purposes of bankruptcy, a judicial lien is one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

To create a judicial lien in Vermont, a person who has received a final judgment must record that judgment in any town where real property of the debtor is located. Vt. Stat. Ann. tit. 12, § 2904. If that person had previously attached real property of the debtor in the action in which judgment was rendered, then the recording of that judgment (the judicial lien) will relate back to the date of attachment only if such judgment was recorded within sixty days of its becoming final. Vt. Stat. Ann. tit. 12, § 2902. If not, then the judicial lien becomes effective as of the date final judgment issued. Vt. Stat. Ann. tit. 12, § 2903(a).

With regard to judicial liens in bankruptcy, the bankruptcy code permits debtors to avoid judicial liens if those liens impair the debtor's claimed homestead exemption. 11 U.S.C. § 522(f)(1)(a). However, because Naylor has yet to record his judgment, the issue of whether his judgment impairs the Debtors' homestead exemption is not ripe for review. Accordingly, this Court does not address it.

### IV.

The final issue Naylor raises in his appeal is whether the Debtors properly refinanced their homestead while it was encumbered by his contractors' lien? This question is easily disposed of by reference to Vermont law. Vermont law, Vt. Stat. Ann. tit. 9, § 1923, states that a debtor, or any person whose property is subject to a contractors' lien, may deed, mortgage, or otherwise convey the subject property so long as that person discloses such lien to the vendee or mortgagee in writing or states the existence of the same in the instrument conveying or mortgaging such property. The Debtor's informed their mortgagee, Aegis, of Naylor's lien prior to refinancing. Therefore, the Debtor's lawfully refinanced their home even though it was, as Naylor phrases it, in "defiance" of Naylor's lien. (Br. Of Appellant 16.)

### Conclusion

For the reasons stated above, the Court **AFFIRMS** the Orders of the Bankruptcy Court. Naylor's Motions for stay are **DENIED** as moot.