VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-05243



Master Plumbing and Heating, Inc.
     Plaintiff

v.

Trevor Barlow and Sheryl Backstrom
     Defendants

<u>Decision on Motion for Writ of Attachment</u>

Defendants Trevor Barlow and Sheryl Backstrom are the owners of a commercial building in Cavendish, Vermont. Prior to the floods of 2023, defendants contracted with plaintiff Master Plumbing and Heating, Inc. for plumbing renovations at the commercial building. Shortly after the work began, the building was devastated by floodwaters, and defendants asked plaintiff to assist with repairing the heating system. After plaintiff performed at least some work on a time-and-materials basis, defendants paid two invoices but refused to pay more. Plaintiff asserted a lien against the property and filed the present civil action to enforce the lien. 9 V.S.A. § 1924.

Generally, the purpose of the mechanic's lien is to permit contractors and subcontractors to "secure the payment" for their home-improvement work on real property. 9 V.S.A. § 1921(a); *Newport Sand and Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 69 (1992). A contractor or subcontractor may assert the lien by giving written notice to the property owner and by filing a written memorandum with the town clerk within a specified period of time. 9 V.S.A. §§ 1921(b) & 1923; *In re Cusson*, 412 B.R. 646, 654 (D. Vt. 2009). A contractor must thereafter commence a civil action and obtain an attachment "[w]ithin 180 days from the time of filing such memorandum." 9 V.S.A. § 1924; *Filter Equipment Co., Inc. v. International Business Machines Corp.*, 142 Vt. 499, 501–02 (1983); Cusson, 412 B.R. at 654; *In re APC Construction, Inc.*, 132 B.R. 690, 694 (D. Vt. 1991).

An attachment of real property is intended to be an "extraordinary remedy." *Brastex Corp. v. Allen International, Inc.*, 702 F.2d 326, 332 (2d Cir. 1983); *Ruggieri-Lam v. Oliver Block LLC*, 120 F.Supp.3d 400, 405 (D. Vt. 2015); *Terranova v. AVCO Financial Services of Barre, Inc.*, 396 F.Supp. 1402, 1406–07 (D. Vt. 1975). Except under circumstances not present here, orders of approval are issued only after notice and an opportunity for a hearing, at which the moving party bears the burden of persuading the court that there is "a reasonable likelihood that the [movant] will recover judgment, including interests and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the [non-moving party] to be available to satisfy the judgment." Vt. R. Civ. P. 4.1(b)(2); *Ruggieri-Lam*, 120 F.Supp.3d at 405; *Troy Boiler Works, Inc. v. Long Falls Paperboard, LLC*, 2021 WL 8694355 at *7 (D. Vt. Aug. 13, 2021). A

finding of a "reasonable likelihood" of success on the merits is intended to be "a realistic conclusion by the court on the basis of affidavits and other evidence presented at the hearing as to the actual probability of recovery by the [movant]," and the court must consider any modifying evidence and affirmative defenses offered by the non-moving party. Vt. R. Civ. P. 4.1, Reporter's Notes—1973 Amendment; *Ruggieri-Lam*, 120 F.Supp.3d 400, 405–09 (D. Vt. 2015); *Vermont Federal Credit Union v. Richter*, No. 2013-354, 2014 WL 3714629 (Vt. Feb. 2014) (unpub. mem.); *Wellford v. Eissmann*, No. 747-10-09 Wrcv, 2010 WL 2259084 (Vt. Super. Ct. Mar. 9, 2010) (Eaton, J.); *The McKernon Group, Inc. v. Felten*, No. 737-10-08 Wrcv, 2009 WL 6356593 (Vt. Super. Ct. Jan. 16, 2009) (Eaton, J.).

Here, the credible evidence presented at the motion hearing established the following facts. As mentioned, defendants contracted with plaintiff to perform plumbing renovations at a commercial building, but the 2023 floods devastated the building shortly after the work began. In particular, the floods ruined the heating system. During the chaotic aftermath of the floods, defendants talked with plaintiff's representatives about installing a new heating system at the building. Plaintiff's representatives made at least some representations that the cost of a new heating system would be reasonable, and that financial assistance was potentially available from Efficiency Vermont. Firm plans were not made, however, and plaintiff did not provide a formal estimate. Instead, plaintiff began work on the new heating system on a time-and-materials basis, and promised to provide an estimate when it became available. Plaintiff thereafter performed some wall penetrations and began preparing the building for a new system. Plaintiff submitted two invoices to defendants in the amount of $19,412.50, which defendants paid. Plaintiff then continued working, and submitted more invoices for an additional $39,609.04. At that point, defendants repeated their request for an estimate, and were told by plaintiff's representative that the cost would be in the "ballpark" of $165,000. Defendants found this unreasonable, and further discovered that plaintiff had not contacted Efficiency Vermont, and that Efficiency Vermont would provide only limited financial assistance for the project. Defendants ordered plaintiff to stop work and refused to pay the outstanding invoices. Defendants then found a different contractor to install a different heating system for the price of about $50,000. Plaintiff thereafter asserted its lien and filed the present action for collection of the invoiced amounts.

At issue is whether plaintiff has shown a "reasonable likelihood" that it will prevail at trial on its claim for breach of contract. Plaintiff offered evidence sufficient to establish that the parties entered into a time-and-materials contract for the installation of a heating system, that plaintiff performed work on that contract, that plaintiff submitted an invoice pursuant to the contract in the amount of $39,609.04, and that defendants refused to pay the amounts due. A claim for breach of a construction contract is established by that evidence. *VanVelsor v. Dzewaltowski*, 136 Vt. 103, 105–06 (1978); *Cass-Warner Corp. v. Brickman*, 126 Vt. 329, 336–37 (1967).

Defendants argue that no contract was formed because the estimate was never provided and accepted, that the work performed by plaintiffs was in anticipation of a contract rather than in performance of it, and that the risk of contract failure in this situation should have been borne by plaintiff, rather than by defendants. It is generally true that contracts are not formed until there has been a meeting of the minds on the essential terms of the bargain, *Sweet v. St. Pierre*, 2018 VT 122, ¶¶ 13–15, 209 Vt. 1, and it is possible that, at a merits hearing, the court might see the evidence differently. Based upon the evidence presented at the attachment hearing, however, plaintiffs established by a preponderance of the evidence that the essential terms of a time-and-materials contract

were agreed upon, and that they involved the installation of a heating system for the cost of materials plus agreed-upon rates for time. 1 Bruner & O'Connor on Construction Law § 2:29. Although the terms of the contract were sparse, the court was persuaded by the chaotic circumstances surrounding the formation of the agreement, and by the evidence that defendants paid the first two invoices submitted by plaintiff for its work. For these reasons, even after taking defendants' modifying evidence into account, *Felten*, No. 737-10-08 Wrcv, 2009 WL 6356593, the court finds that plaintiff has established a "reasonable likelihood" that it will prevail at trial on its claim for breach of contract.

Defendants assert a right to setoff for defective workmanship. See *Battenkill Constr. Co., Inc. v. Haig's, Inc.*, 133 Vt. 503, 504–05 (1975) (explaining that a defendant may "reduce the plaintiff's claimed damages by proving that the services were unskillfully or negligently performed"). Defendants argue in particular that plaintiff performed wall perforations that were either unnecessary or unworkmanlike, and that these perforations had to be repaired later, by other contractors. It was unclear to the court at the motion hearing, however, whether the repairs were needed because the other contractor chose a different type of heating system, or because the perforations were undertaken in an unnecessary or unworkmanlike manner. At trial, expert testimony will be needed to elucidate the point. *Trombly Plumbing & Heating v. Quinn*, 2011 VT 70, ¶ 14, 190 Vt. 552 (mem.). For purposes of the attachment hearing, defendants did not establish a reasonable likelihood of an offset based upon defective workmanship.

Defendants also assert that the heating system chosen by plaintiff was unreasonable, and cost too much. Again, expert testimony will be needed at trial to establish the proposition. As present, the court knows only that plaintiff's plan cost in the "ballpark" of $165,000, and that a different plan cost about a third as much. No comparative information was offered, and the court does not know what were the differences between the two plans, nor whether plaintiff's plan represented a departure from industry standards, nor whether plaintiff's plan was unreasonable for some other reason. *Quinn*, 2011 VT 70, ¶ 14, 190 Vt. 552 (mem.). As such, the court cannot make predictive findings about whether plaintiff's choice was a breach of contract, nor about whether plaintiff made a material misrepresentation when its representative said that the cost of the system would be "reasonable." At present, there is no evidentiary framework or standard for evaluating that statement.

Defendants argue finally that plaintiff misrepresented the amount of assistance that would be provided by Efficiency Vermont. Here, again, the evidence was not sufficient to establish the proposition. As far as the court could tell from the evidence presented, Efficiency Vermont is a third-party entity that functions in either a governmental or quasi-governmental role by encouraging certain types of renovation work through financial incentives. It was not explained to the court how the incentives work, and it was unclear whether the financial-assistance programs are organized through the contractor or instead through applications made by the property owner. If the programs are organized through the contractor, and the contractor told the client "I will obtain financial assistance for you from Efficiency Vermont," and then failed to do so, that would be one thing. But if the programs function through applications made by a property owner, and the contractor told the client that "financial assistance might be available from Efficiency Vermont," and the client never followed up with the entity, that would be another. It was the court's impression from the evidence that this situation was more like the latter. A different impression might be established on the merits, after an opportunity for discovery, but, for purposes of the attachment hearing, defendants did not establish a

reasonable likelihood that a material misrepresentation occurred here. *Felten*, No. 737-10-08 Wrcv, 2009 WL 6356593.

At this time, however, the court does not find a reasonable likelihood that plaintiff will prevail on a claim for a withholding penalty under 9 V.S.A. § 4007(b). At least on the basis of the information presented thus far, defendants' withholding bears a reasonable relation to the value of their claims, and their claims have been asserted in good faith. *Birchwood Land Co., Inc. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 29, 194 Vt. 478; *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 8, 178 Vt. 77.

For these reasons, the court will issue an order of approval in the principal amount of $39,609.04, together with costs of $300.00 and estimated prejudgment interest as of today's date in the amount of $3,240.30, for a total approved amount of $43,149.34.

Electronically signed on Tuesday, July 16, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 07/16/24
Windsor Unit